UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON DEL THIBODEAU, Pro Se,<br><br>                               Plaintiff,<br><br>v.<br><br>ADT SECURITY SERVICES, a/k/a/<br>ADT HOLDINGS, INC.,<br><br>                              Defendant. | Case No.:  3:16-cv-02680-GPC-AGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF PLAINTIFF'S COMPLAINT**<br><br>[ECF No. 17.] |

On January 12, 2017, Defendant ADT LLC, d/b/a ADT Security Services ("Defendant") filed a motion to dismiss count one of Plaintiff Clayton Del Thibodeau's ("Plaintiff's") Amended Complaint pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 17.)  Plaintiff filed a response on January 26, 2017.  (Dkt. No. 21.)  Defendant filed a reply on February 10, 2017.  (Dkt. No. 23.)

The Court deems this motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having reviewed Defendant's motion and the applicable law, and for the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss the First Cause of Action of Plaintiff's Amended Complaint.

## BACKGROUND

Defendant is a corporation that provides electronic security monitoring and dispatch services to residential and small business clients.  (Dkt. No. 14, Am. Compl. at 3

¶ 1.[1])  Plaintiff worked for Defendant as an outside sales representative in San Diego and Imperial County from September 9, 2014 through October 2, 2015.  (*Id.* ¶ 2.)  Plaintiff received a base salary of $480 per week, as well as any commissions earned from selling security systems and monitoring contracts.  (*Id.*)  Defendant made no promise or guarantee regarding any commissions Plaintiff would earn.  (*Id.*)

Plaintiff asserts that Defendant's misconduct began from the moment he was hired. (*Id.* ¶ 3.)  Plaintiff alleges that Defendant frequently distributed misleading advertisements that obscured or omitted vital pricing information (*id.* at 7 ¶¶ 5–6, 8 ¶ 1, Ex. 1); used unethical and unlawful soliciting practices by offering potential customers a "free" security system with few features, without informing those customers they must also sign a two-year contract for monitoring services to qualify for that system (*id.* at 8 ¶¶ 3–4); constantly harassed prospective customers through phone solicitation by having multiple sales representatives call the same prospects every night (*id.* at 9 ¶¶ 1–2); trained employees to intentionally obscure the Defendant's trade name by crumpling paper near the mouthpiece of the phone when stating the company name (*id.* at 10 ¶ 2, Ex. 8); and used "bait-and-switch" tactics that would bait prospective customers to make an appointment by offering low-priced systems, which allowed employees the opportunity to switch those customers to a higher-priced system during the sales appointment (*id.* at 11 ¶¶ 2–4).

Plaintiff alleges that his refusal to participate in these practices resulted in Defendant refusing to set appointments for Plaintiff or inundating Plaintiff with "low quality leads exclusive to areas on the far outskirts of San Diego County and Imperial County."  (*Id.* at 8 ¶ 5.)  Defendant's alleged retaliation also included burdening "Plaintiff with work assignments . . . that were not 'sales' related," requiring Plaintiff to spend more than half of the working day on non-sales related work.  (*Id.* at 27 ¶ 3.)

---

[1] All citations to the record therein are based upon the pagination imprinted by the CM/ECF system.

Additionally, Plaintiff alleges that Defendant committed a range of labor violations, including failing to: pay him a minimum wage (*id.* at 26 ¶ 2–5); properly classify him as non-exempt for overtime (*id.* at 26 ¶ 7–27 ¶ 3); compensate him for overtime hours worked (*id.* at 27 ¶ 3); and adequately reimburse him for expenses he necessarily incurred as an employee (*id.* at 23 ¶ 3–24 ¶ 3.)

On October 2, 2015, Plaintiff voluntarily resigned via an e-mail message sent to a sales manager in San Diego. (*Id.* at Ex. 23.) Additionally, Plaintiff e-mailed Peter Beatty, the Director of Employee Relations within Defendant's headquarters, to inform him that his decision to quit was predicated on the alleged harassment, abuse, and continuing misconduct of Defendant. (*Id.* at Ex. 25.)

Plaintiff's Amended Complaint alleges nine causes of action: (1) violation of California's Unfair Competition Law; (2) whistleblower retaliation; (3) violation of Defendant's fiduciary duty to Plaintiff through the unauthorized distribution of information related to Plaintiff's customers; (4) failure to adequately reimburse Plaintiff for expenses he incurred while using his personal vehicle for work; (5) failure to pay overtime; (6) failure to provide rest days; (7) failure to provide wage statements; (8) denial of timely access to employee file; and (9) failure to display a list of employees' rights and responsibilities.

On January 12, 2017, Defendant brought the instant motion to dismiss Plaintiff's first cause of action, arguing Plaintiff lacks standing to sue under California's Unfair Competition Law. (Dkt. No. 17.) The motion has been fully briefed. (Dkt. Nos. 21, 23.)

/ / / /

/ / / /

/ / / /

/ / / /

# LEGAL STANDARD[2]

## A. Rule 12(b)(6)

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests "the legal sufficiency of a complaint's allegations." *Clark v. Zeiger*, 210 F. App'x 612, 612 (9th Cir. 2006). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. United States,* 831 F.3d 1159, 1162 (9th Cir. 2016).

Complaints do "not require 'detailed factual allegations,'" but, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, a legally sufficient complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable

---

[2] Defendant's Notice of Motion to Dismiss states that Defendant moves to dismiss Plaintiff's first claim under Fed. R. Civ. P. 12(b)(1) *and* 12(b)(6). (Dkt. No. 17 at 2 ¶ 1.) However, Defendant's Memorandum of Points and Authorities solely concerns statutory standing, an issue properly brought under Fed. R. Civ. P. 12(b)(6). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction."); *Jewel v. NSA*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) ("Statutory standing, unlike constitutional standing, is not jurisdictional.") (internal citations omitted). Nonetheless, cognizant of the Court's obligation to ensure it has jurisdiction over this claim, the Court reviewed Defendant's Notice of Removal (Dkt. No. 1) and Plaintiff's Amended Complaint (Dkt. No. 14), and confirmed that the Court does have subject matter jurisdiction over this case, as complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; Fed. R. Civ. P. 12(b)(1). Additionally, Plaintiff has pled allegations sufficient to establish Article III standing for the same reasons Plaintiff has pled allegations sufficient to establish standing under the UCL. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("[T]o plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct."); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 886 (Cal. 2011) ("[S]tanding under section 17204 [is] substantially narrower than standing under article III.").

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Gant v. Cty. Of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). "Pro se complaints are construed 'liberally' and may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Nordstrom v. Ryan,* 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### I. California's Unfair Competition Law ("UCL")

Plaintiff's Amended Complaint asserts that Plaintiff has standing to sue under the UCL, as Plaintiff's prior employee-employer relationship with Defendant satisfies the "business dealings" requirement allegedly prescribed by Proposition 64. (Am. Compl. at 5 ¶ 5.) Plaintiff further alleges he has suffered injury, as Defendant committed numerous anticompetitive acts, all of which reduced his wages and bonuses and required him to invest a significant amount of time into unproductive work. (*Id.* at 5 ¶ 4, 7 ¶ 2.)

Defendant argues that Plaintiff lacks standing to sue under California's Unfair Competition Law, as (1) Plaintiff has no prior business dealings with Defendant and (2) cannot allege he parted with or lost any money or property as a result of Defendant's alleged anticompetitive conduct. (Dkt. No. 17-1 at 5–7.)

### A. "Business Dealings" Requirement

As a preliminary matter, standing to sue under California's Unfair Competition Law does not require a prior business relationship. Defendant correctly asserts that a prior employer-employee relationship does not automatically confer standing to sue under the UCL. However, Defendant erroneously states that "UCL standing has been narrowly interpreted so as to 'eliminate standing for those who have not engaged in any business dealings with would-be defendants.'" (Dkt. No. 17-1 at 6.)

Defendant cites *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV1403053MWFVBKX, 2015 WL 12778048 (C.D. Cal. Oct. 23, 2015), as supporting a prior business dealings requirement. (Dkt. No. 17-1 at 6.) However, the language Defendant cites to does not hold that the UCL has a business dealings requirement; rather, it quotes dicta from the California Supreme Court's opinion in *Kwikset* describing the history behind Proposition 64, a ballot measure that substantially revised the UCL's standing provisions for private individuals. *See* 2015 WL 12778048, at *21. In *Kwikset*, the California Supreme Court stated that the goal of Proposition 64 was "to eliminate standing for those who have not engaged in any business dealings with would-be defendants." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011).[3] The court held that "under the UCL, standing extends to 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Id.* at 321 (citing § 17204). There is no additional requirement that a plaintiff show prior business dealings to have standing to sue under the UCL.

Indeed, courts have consistently held that Cal. Bus & Prof. Code § 17204 "does not mandate a 'business dealings requirement.'" *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1381 (Fed. Cir. 2011); *see also Obesity Research Inst. LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016) ("There is no requirement that there be allegations of business dealings between parties."); *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 153 Cal. Rptr. 3d 865, 880 (Cal. Ct. App. 2013) ("Section 17204 permits a UCL lawsuit to be prosecuted . . . by a person who

---

[3] Proposition 64 was passed based on a general "concern that the UCL and false advertising law were being 'misused by some private attorneys' to file suits on behalf of 'clients who [had] not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant' and had not 'been injured in fact' . . . [i]n short, voters focused on curbing shakedown suits by parties who had never engaged in *any* transactions with would-be defendants." *Kwikset*, 246 P.3d at 894 n.21 (quoting Voter Information Guide, Gen. Elec., *Prop 64: Findings and Declarations of Purpose*, at 109 (Nov. 2, 2004)) (emphasis in original). The existence of prior business dealings may help show that a plaintiff engaged in a transaction with a would-be defendant, but it is not dispositive.

has suffered injury in fact and has lost money or property as a result of unfair competition . . . the language is clear on its face and contains *no requirement* that the plaintiff must have engaged in business dealings with the defendant.") (emphasis added) (internal citations omitted).

Accordingly, Plaintiff does not have to plead prior business dealings to establish standing under the UCL.

### B. UCL Standing

Standing under California's Unfair Competition Laws requires a private plaintiff to demonstrate that he suffered (1) an "injury in fact" and (2) "lost money or property" as (3) "a result of" (4) Defendant's "unfair competition."[4] Cal. Bus & Prof. Code § 17204; *Kwikset Corp.*, 246 P.3d at 885 ("To satisfy the narrower standing requirements . . . a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e. *caused by*, the unfair business practice."). At the pleading stage, the Plaintiff must allege facts that, taken as true, sufficiently satisfy each element. *See Obesity Research Inst., LLC*, 165 F. Supp. 3d at 945 ("Failure to allege sufficient statutory standing requires dismissal under Federal Rules of Civil Procedure 12(b)(6).").

////

---

[4] Defendant does not contend that Plaintiff failed to allege facts sufficient to show Defendant engaged in unfair competition. As a result, the Court considers only whether Plaintiff has pled sufficient facts that show economic injury and causation. Unfair competition is defined broadly as "any unlawful, unfair or fraudulent business act or practice *and* unfair, deceptive, untrue misleading advertising *and* any act prohibited by [the statutory prohibition of false advertising] (commencing with §17500)." Cal. Bus & Prof. Code § 17200 (emphases added). Additionally, California's unfair competition law borrows violations of other laws, including the unlawful "actions of employers taken with respect to their employees," and "makes those unlawful practices actionable under the UCL." *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) (internal citations omitted). Here, as discussed *infra*, Plaintiff has alleged facts showing unfair competition. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 247 (Cal. 2011) ("Failure to pay legally required overtime compensation falls within the UCL's definition of an 'unlawful . . . business act or practice.'"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (Cal. 2000) ("Unlawfully withheld wages are property of the employee within the contemplation of the UCL.").

### 1. Economic Injury

A private plaintiff suing under the UCL must demonstrate that he has "suffered injury in fact and has lost money or property." Cal. Bus & Prof. Code § 17204. "Lost money or property—economic injury—is itself a classic form of injury in fact." *Kwikset Corp.*, 246 P.3d at 886. In establishing economic injury, "plaintiff must show either prior possession or a vested legal interest in the money or property allegedly lost." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007) *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009). However, "injury in fact is not a substantial or insurmountable hurdle." *Kwikset Corp.*, 246 P.3d at 886. Plaintiff need only "allege an 'identifiable trifle' of economic injury." *Id.* at 891 n.15.

#### a. Losses in Sales, Commissions, Bonuses, Promotion Opportunities, or Referrals

Defendant's motion to dismiss argues that Plaintiff fails to allege facts showing he suffered any economic injury, as he "cannot allege that he 'has parted . . . with some identifiable sum formerly belonging to him or subject to his control.'" (Dkt. No. 17-1 at 6 ¶ 2.) Defendant asserts that all of "Plaintiff's alleged injuries are based on sales opportunities or promotions that Plaintiff did not receive," and as Plaintiff was never guaranteed the bonuses, awards, commissions, or promotions that Plaintiff discusses in his Amended Complaint, his "alleged injuries are [too] . . . speculative, conjectural, and hypothetical" to satisfy the UCL's standing requirements. (*Id.* at 4 ¶ 1.)

Plaintiff alleges that Defendant's anticompetitive behavior reduced his sales commissions, bonuses, and awards; lowered his total wages and future earnings; and caused him to lose valuable time and referral opportunities. (Am. Compl. at 5 ¶ 4, 6 ¶ 4, 7 ¶ 6, 8 ¶ 5, 9 ¶ 4, 10 ¶ 4.) Defendant is correct that these injuries, as alleged, are too conjectural to show economic injury. Commissions, bonuses, awards, and future earnings were contingent on Plaintiff's sales performance, and Defendant made no promise or guarantee to Plaintiff regarding actual sales commissions he would earn. (*Id.* at 3 ¶ 2.) Plaintiff cannot have a vested interest in expected, yet unearned, commission.

*See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("[E]xpected commission is merely a contingent interest.").

In addition, Plaintiff alleges Defendant denied him commission for contracts he sold to customers.[5]  (Am. Compl. at 20 ¶ 7–21 ¶ 1.).  Under the contract between Plaintiff and Defendant, commissions are paid upon installation.  (*Id.* at Ex. 3.)  Plaintiff alleges that the Defendant, as reprisal for Plaintiff's refusal to engage in unlawful activity, sold customer information for clients that bought a contract from Plaintiff, but had yet to install the security system, to a third party.  (*Id.* at 20 ¶ 7.)  As a result, the third party undercut Plaintiff's price and poached the customer before the system was installed.  (*Id.* at 21 ¶ 1.)  Plaintiff believes he was thus denied commission he earned.  (Dkt. No. 14 at 22 ¶ 1.)

However, "[a] commission is 'earned' when the employee has perfected the right to payment; that is, when all of the legal conditions precedent have been met."  Cal. Dep't. Indus. Rel.: Div. Labor Standards Enf't., Opinion Letter on Payment of Commission Upon Termination of Employment, at 2 (Jan. 9, 1999).  Plaintiff's contract specifically states that commission is not paid until "the installation is complete and the sale is closed in the order entry system.  (Am. Compl. at Ex. 3.)  And "if a commission [i]s not earned, [Plaintiff] [i]s not entitled to it" as part of his wages, and therefore has no vested legal interest in the lost commission.  *Koehl v. Verio, Inc.*, 48 Cal. Rptr. 3d 749, 756 (Cal. Ct. App. 2006).  Even taking Plaintiff's allegations as true, Plaintiff did not have a vested interest in the commission until installation was complete.

Accordingly, none of the alleged injuries relating to losses in sales, commissions, bonuses, promotion opportunities, or referrals show economic injury.

---

[5] Plaintiff's opposition to Defendant's motion to dismiss also discusses compensation earned "as the result of . . . business dealings performed for and/or on behalf of the defendant," that was then "'extracted' from Plaintiff's remunerations . . . as a result of Plaintiff's refusal to participate in Defendant's fraudulent activities." (Dkt No. 21 at 4 ¶ 4.)  Without more detailed factual allegations, it appears that this conduct refers to the same behavior discussed in the paragraph above.

### b. Denial of Earned Wages and Reimbursement

Cognizant of the Court's obligation to construe *pro se* pleadings liberally, the Court examines the remaining allegations in Plaintiff's Amended Complaint and concludes that Plaintiff has sufficiently alleged injury for purposes of UCL standing. Plaintiff alleges that: (1) he had to pay out-of-pocket for fuel, which could cost Plaintiff as much as $20 or $30 per appointment (Am. Compl. at 8 ¶ 1); (2) Defendant only reimbursed Plaintiff for 17,000 of the 33,000 business miles he allegedly logged onto his personal vehicle (*id.* at 23 ¶ 4–5); (3) Defendant's mileage reimbursement rate was insufficient to cover "the cost of gas . . . depreciation; maintenance; licensing and other eligible expenditures" (*id.* at ¶ 6); and (4) Defendant failed to compensate Plaintiff for all hours worked (*id.* at 26 ¶¶ 3–5, 27 ¶¶ 1–3.) These injuries are neither speculative nor conjectural.

### 1. Labor Code Violations

Defendant argues summarily that "California does not permit UCL claims to be based on alleged Labor Code violations." (Dkt. No. 23 at 7 ¶ 2.) Defendant's position is incorrect; while some statutory penalties under the Labor Code may not create economic injury sufficient to plead UCL standing, there is no blanket prohibition against basing a UCL claim on alleged Labor Code violations.

Defendant forwards two arguments in support its position: (1) a business relationship is necessary to establish UCL standing; and (2) "violation of a statutory right [under the Labor Code] is not an economic injury." (*Id.*) Defendant's first argument fails because, as discussed above, standing under the UCL does not require a prior business relationship. *See supra* Part I.A.

In support of its second argument, Defendant cites *McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222 (C.D. Cal. 2011), arguing that a violation of the Labor Code implicates only a statutory right, and thus can never establish economic injury. (Dkt. No. 23 at 7 ¶ 2.) However, Defendant misstates *McKenzie*'s holding. The plaintiff in *McKenzie* alleged two injuries: "violation of her 'statutory protected right to receive an

accurate wage statement;' and 'mathematical injury' by having to conduct discovery and mathematical computations to verify whether she was paid correctly." 765 F. Supp. 2d at 1237. While the court held that those injuries were insufficient to establish standing under the UCL because they were "intangible," the court's holding was premised on the finding that the plaintiff "failed to introduce evidence that she lost money or property as a result of these non-compliant wage statements." *Id.* The *McKenzie* plaintiff's damages were not based on money that her employer unlawfully withheld—rather, her damages were penalties provided by statute. *See id.* at 1225; *see also* Cal. Lab. Code § 226 ("An employee suffering injury as a result of a knowing and intentional failure by an employer to [provide a wage statement] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."); *Pineda v. Bank of Am., N.A.*, 241 P.3d 870, 878 (Cal. 2010) (holding that plaintiffs cannot recovery statutory penalties under the Labor Code through a UCL action, as those penalties are "not designed to compensate employees for work performed . . . it is the employers' action (or inaction) that gives rise to [statutory] penalties. The vested interest in unpaid wages, on the other hand, arises out of *the employees'* action, i.e., their labor.") (emphasis in original).

Here, while Plaintiff also alleges that Defendant failed to provide written wage statements and seeks damages based on Defendant's violation of Cal. Lab. Code § 226, (Am. Compl. at 30), Plaintiff alleges a range of Labor Code violations, as Defendant admits, (Dkt. No. 23 at 7 ¶ 2). Plaintiff pleads factual allegations that sufficiently show economic injury resulting from Defendant denying Plaintiff money he either earned or had a right to recover as reimbursement. (Compl. at 8 ¶ 1, 23 ¶¶ 4–6, 26 ¶¶ 3–5, 27 ¶¶ 1–3); *see also Pineda*, 241 P.3d at 878 ("[I]t was of no import that . . . wages had never been in the possession of the employees; 'earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a

person surrenders through an unfair business practice.'") (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (Cal. 2000)); *Reyez v. Van Elk, Ltd.*, 56 Cal. Rptr. 3d 68, 73 (Cal. Ct. App. 2007) ("Earned but unpaid salary or wages are vested property rights.") (internal citations omitted).

Accordingly, as discussed below, the Court concludes that Plaintiff has sufficiently pled economic injury based upon Defendant's alleged Labor Code violations.

### 2. Failure to Compensate

Plaintiff alleges that he "was never compensated by Defendant for any hours worked in excess of 8 hours in a day or 40 hours in a week." (Compl. at 26 ¶¶ 3–5.) Rather, he received only his base pay of $480 per week (based on a salary of $12 per hour for a 40-hour work week), plus any commissions for sales closed. (*Id.*) Plaintiff alleges that, in retaliation for refusing to participate in Defendant's allegedly unlawful acts, he was burdened with an excessive amount of work only indirectly related to sales, and spent most of his time participating in training and conferences, delivering signs and installation material, assisting managers in setting up event displays, attending mandatory company events, and handling customer service complaints. (*Id.* at 27 ¶ 3.) Further, Plaintiff alleges he was improperly classified as exempt from overtime compensation. (*Id.* at 27 ¶ 1–28 ¶ 2.)

Plaintiff is entitled to a minimum wage "for all time spent on activities that do not allow [him] to directly earn wages"—moreover, "activities that are only indirectly related to sales or services must also be compensated." *Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1007–08 (S.D. Cal. 2012). If Plaintiff earned less than the minimum wage for incidental work indirectly related to sales, he is entitled to recover the unpaid difference. *See* Cal. Lab. Code § 1194 ("[A]ny employee receiving less than the legal minimum wage . . . is entitled to recover . . . the unpaid balance of the full amount of this minimum wage."); *Ontiveros v. Zamora*, No. CIV S-08-567LKK/DAD, 2009 WL 425962, at *4 (E.D. Cal. Feb. 20, 2009). As "unlawfully withheld wages are property of

the employee within the contemplation of the UCL," *Cortez*, 23 Cal. 4th at 178, Plaintiff has satisfactorily pled an economic injury.

### 3. Failure to Reimburse

Under the California Labor Code, employers are statutorily obligated to indemnify their employee for any necessary expenditures or losses incurred by the employee "in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802. An employee's indemnification right is unwaivable. *See* Cal. Lab. Code § 2804; *see also Edwards v. Arthur Anderson, LLP*, 189 P.3d 285, 295 (Cal. 2008) ("[A]ny contract that does purport to waive an employee's indemnity right would be contrary to the law and therefore unlawful to that extent."). Moreover, "wages and expense reimbursement are conceptually distinct and subject to different statutory and sometimes contractual constraints," and "an employer may not combine the payments for both in a way that would seriously hamper or effectively preclude enforcement of the various statutory and contractual obligations." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 900 (Cal. 2007). California's statutory reimbursement requirement is meant "to prevent employers from passing their operating expenses on to their employees." *Id.* at 893.

Plaintiff's allegations show he was required to pay for fuel, maintenance, and licensing in direct consequence of his duties. Plaintiff parted with money he once possessed when Defendant refused to adequately reimburse the Plaintiff's expenses.[6] These allegations establish economic injury.

### C. Causation

In addition to pleading economic injury, plaintiff must show a "causal connection between [Defendant's] alleged UCL violation and [his] injury in fact" to establish standing. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). "That causal

---

[6] Although Plaintiff admits that Defendant reimbursed some of the costs, "if the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use . . . the employer must make up the difference." *Gattuso*, 169 P.3d at 898.

connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Daro v. Superior Court*, 61 Cal. Rptr. 3d 716, 726 (Cal. Ct. App. 2007).

Defendant argues that "Plaintiff cannot reasonably claim his economic injury, if any, was caused by the alleged UCL violations" as he "continually asserts that ADT did not pay him for 'business services rendered' because 'he refused to comply with' or 'participate in [ADT's] unlawful acts.'"[8] (Dkt. No. 23 at 4 ¶ 4–5 ¶ 1.) Defendant argues that accordingly, Plaintiff failed to allege his economic injury was caused by Defendant's conduct; rather, his injury was self-inflicted. (*Id.*) However, the causation requirement is met for Plaintiff's economic injuries.

First, Plaintiff's operative economic injury is not that he was burdened by more non-sales related tasks. Rather, Plaintiff alleges Defendant's decision to pay Plaintiff only his base salary meant Plaintiff was paid less than the minimum wage for incidental, non-sales related work; and that, after Plaintiff slid into non-exempt status, he never received overtime compensation, even when he worked over "60 or 70 hours in a week." (*Id.* at 26 ¶¶ 3–5, 27 ¶ 2–28 ¶ 2.) In the abstract, it is not unlawful for an employer to adopt policies that require a salesperson to perform more non-sales related work; what is unlawful is the failure to pay employees in accordance with California's minimum wage and overtime laws. *See Sullivan*, 254 P.3d 237, 248 (Cal. 2011) ("But for an employer to adopt an erroneous classification policy is not unlawful in the abstract . . . [w]hat is unlawful, and what creates liability . . . is the failure to pay overtime when due."). Therefore, even assuming *arguendo* that Plaintiff was responsible for Defendant's choice to shift Plaintiff from sales to non-sales related work, Plaintiff's economic injury would

---

[8] Defendant's original motion to dismiss asserted only that Plaintiff failed to allege facts sufficient to show economic injury, and did not discuss causation. The first time the causation argument appears is in Defendant's reply to Plaintiff's opposition.

not occur but for Defendant's failure to abide by California's wage laws and compensate Plaintiff for all of his work.

Second, Plaintiff alleges that he suffered an economic injury in the form of out-of-pocket expenses that were necessary to the fulfillment of his duties as Defendant's employee.  (Am. Compl. at 8 ¶ 1, 24 ¶ 4.)  Plaintiff alleges that he submitted reimbursement requests to Defendant, (*id.* at 2 ¶¶ 2–3), and that Defendant insufficiently calculated reimbursement using a system that "was either inherently or deliberately flawed," (*id.* at 24 ¶ 1).  As a result, Defendant failed to compensate Plaintiff "for actual expenses Plaintiff incurred during his time of employment" as required by Cal. Lab. Code § 2802.  (*Id.* at ¶ 4.)  Defendant does not provide any authority supporting its summary argument that Plaintiff would have suffered this economic injury even absent Defendant's alleged failure to reimburse actual expenses.

Accordingly, Plaintiff has sufficiently alleged that Defendant's unlawful conduct caused his economic injuries.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss the First Cause of Action of Plaintiff's Amended Complaint.  (Dkt. No. 17.)

**IT IS SO ORDERED.**

Dated:  February 28, 2017

Hon. Gonzalo P. Curiel
United States District Judge