UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON DEL THIBODEAU, Pro Se,<br><br>                     Plaintiff,<br><br>v.<br><br>ADT SECURITY SERVICES, a/k/a/<br>ADT HOLDINGS, INC.,<br><br>                    Defendant. | Case No.:  3:16-cv-02680-GPC-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[DKT. NO. 49.]** |

      Before the Court is Defendant ADT LLC's, d/b/a ADT Security Services ("Defendant" or "ADT")) Amended Motion for Partial Summary Judgment filed on September 21, 2017.[1]  Dkt. No. 49.  On November 30, 2017, Plaintiff Clayton Del Thibodeau, proceeding pro se, filed a Response in Opposition concurrently with the Declaration of Clayton Del Thibodeau, a Separate Statement of Material Facts, and a

---

[1] Defendant originally filed their Motion on September 1, 2017.  Dkt. No. 38.  Defendant filed an Amended Motion for Summary Judgment to correct a filing error on September 5, 2017.  Dkt. No. 40. On September 20, 2017, Plaintiff filed a Motion to Quash ADT's Motion.  Dkt. No.  47.  The Court directed Defendant to either file an opposition brief as to the Motion to Quash or to re-serve Plaintiff pursuant to *Magnuson v. VideoYesteryear*, 85 F.3d 1424 (9th Cir. 1996) and Federal Rule of Civil Procedure 5(b)(2)(C).  Dkt. No. 48.  Defendant elected to properly re-serve Plaintiff and did so on September 21, 2017.  Dkt. No. 49.

Compendium of Evidence. Dkt. No. 62.[2] On December 15, 2017, Defendant filed a Reply and Objections to Plaintiff's Evidence.[3] Dkt. No. 63. The Court deems this motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

Having reviewed Defendant's motion and the applicable law, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Partial Summary Judgment.

# I. BACKGROUND

Defendant ADT is a corporation that provides residential and business electronic security systems, fire protection, and other related alarm monitoring services. Cole Decl. ¶ 2. Plaintiff worked for Defendant as a Residential High Volume Sales Representative from September 9, 2014 through October 2, 2015. Thibodeau Decl. ¶ 2. Plaintiff was

---

[2] Plaintiff initially filed an opposition on September 18, 2017. Dkt. No. 45. In its reply, Defendant pointed out that Plaintiff had violated the local rules by exceeding page limits and had further failed to include sworn affidavits or declarations necessary to support his opposition to summary judgment. Dkt. No. 56. As a result, pursuant to Federal Rule 56(e)(4), the Court issued an order providing a *Rand* notice to Plaintiff instructing plaintiff of the requirements to oppose summary judgment, struck from the record the Dkt. No. 45 opposition, and ordered plaintiff to file an amended opposition. Dkt. No. 57. On November 9, 2017, likely before Plaintiff received the Court's order, Plaintiff filed an Amended Opposition from Plaintiff that largely challenged the assertions made in Defendant's Reply. As a result, the Court restated the *Rand* notice and directed Plaintiff to file a further Amended Opposition by December 1, 2017. Dkt. No. 60. Accordingly, the operative filings for this instant motion are Dkt. No. 49 (ADT's Amended Motion for Partial Summary Judgment) and Dkt. No. 62 (Plaintiff's Amended Opposition).

[3] The Court has considered Defendant's Objections to Plaintiff's Evidence in making this ruling. To the extent that any objected-to-evidence is relevant and relied on by the court herein, the court overrules any asserted objections to that evidence. With regard to Defendant's personal knowledge and authenticity objections, the Court is satisfied that Plaintiff's exhibits could be submitted in admissible form. *See Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 5169384, at *1-2 (W.D. Mich. Oct. 31, 2011) (holding that 2010 amendments to Rule 56(e) eliminated unequivocal requirement that documents supporting summary judgment must be authenticated and that the pertinent question is not whether a document "has not" been submitted in admissible form, but whether it "cannot be."). With regard to Defendant's hearsay objections, the Court observes that nearly all exhibits presented by Thibodeau likely qualify for the business records exception to hearsay under Federal Rule of Evidence 803(6).

based out of ADT's San Diego Office, which had territorial responsibility for both San Diego and Imperial County. *Id.* ¶¶ 3, 125. High Volume Sales Representatives at ADT are tasked with securing new sales of portfolio package sales and upgrades to new ADT residential customers. Thibodeau Decl. ¶¶ 83, 84, 126, 127. High Volume Sales Representatives are further responsible for tracking the customer's order to completion, ensuring that installation is in accordance with the customer's order, and that the customer is 100% satisfied. Cole Decl. ¶ 7; Thibodeau Decl. ¶ 85. Thibodeau's responsibilities included scheduled appointments with prospective customers, call nights, canvassing in the neighborhood, meetings with residential developers, community promotion events, and travel. Thibodeau Depo. at 44:7-25; 62:19-24. On at least some days, plaintiff spent 100 percent of his day doing sales and solicitation-related activities. Thibodeau Depo. at 181:8-182:3.

ADT had a written policy of issuing a sales quota to High Volume Sales Representatives. Cole Decl. ¶ 8; Thibodeau Decl. ¶¶ 86-87. Plaintiff was required to sell 192 units a year with the expectation of selling 4 units weekly or 16 units per month, and was expected to perform at 100% of the quota. Cole Decl. ¶¶ 7-8. The quota of 192 units was contained within a written Sales Compensation Plan that Plaintiff was provided and signed upon his hiring on September 10, 2014. Cole Del. ¶¶7, 9; Thibodeau Decl. ¶¶ 86-87. Plaintiff received a written warning on July 1, 2015 for failing to meet sales goals for the month of June. Cole Decl. ¶ 11, Ex. C. On September 29, 2015, Plaintiff was given a written warning for failure to meet sales goals in August and September of 2015. *Id.* ¶ 14, Ex. F. Plaintiff resigned from employment with Defendant on October 2, 2016. Thibodeau Depo. 43:4-6; Cole Decl. ¶ 14.

Plaintiff's Amended Complaint alleges nine causes of action: (1) violation of California's Unfair Competition Law; (2) whistleblower retaliation; (3) violation of Defendant's fiduciary duty to Plaintiff through the unauthorized distribution of

information related to Plaintiff's customers; (4) failure to adequately reimburse Plaintiff for expenses he incurred while using his personal vehicle for work; (5) failure to pay overtime; (6) failure to provide rest days; (7) failure to provide wage statements; (8) denial of timely access to employee file; and (9) failure to display a list of employees' rights and responsibilities. Dkt. No. 14. ADT seeks partial summary judgment as to all causes of action, except for the Eighth Cause of Action for denial of timely access to employee file.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). However, the Ninth Circuit has declined to ensure that district courts advise pro se litigants of rule requirements. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir. 1986) ("Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant").

## III. DISCUSSION

### A. California's Unfair Competition Law ("UCL") – First Cause of Action

Plaintiff's first cause of action raises claims under California's Unfair Competition Law. Amended Compl. at 5. "[T]o state a claim for a violation of the [California UCL], a plaintiff must allege that the defendant committed a business act that is either fraudulent,

unlawful, or unfair." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1136 (2010). Each adjective captures a "separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal marks omitted).

Defendant argues that Plaintiff has not yet "established any law, policy, or other authority that his unfair business practices claims are based on." Reply at 5. Pointing to the "unfair" prong of the UCL, Defendant argues that Plaintiff has failed to show a violation "tethered to a legislatively declared policy." *Id.* However, Plaintiff's UCL is not based on the "unfair" prong, but rather on the "unlawful" prong of the UCL. *See, e.g.*, Amended Compl. ("Plaintiff suffered injury by refusing to participate in Defendant's *unlawful* schemes"). Violations of the California Labor Code can support UCL claims under the "unlawful" prong. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 247 (Cal. 2011) ("Failure to pay legally required overtime compensation falls within the UCL's definition of an 'unlawful . . . business act or practice.'")

The Court finds in its analysis below that genuine issues of material fact exist as to Plaintiff's Labor Code claim regarding vehicle reimbursement. Accordingly, the Court will allow plaintiff's Section 17200 claim to proceed on this limited basis.[4] *See Harris v. Vector Mktg. Corp*, 656 F. Supp. 2d 1128, 1147 (N.D. Cal. 2009) (allowing UCL claim to proceed where genuine issues of material fact existed as to employment law claim). However, the Court will not allow a UCL claim based on the failure to receive wage statements to proceed as this claim does not involve economic injury. *See* Dkt. No. 25 at 10-11 (discussing *McKenzie v. Federal Express Corp.*, 765 F. Supp. 2d 1222, 1237 (C.D. Cal. 2011) (right to receive wage statements was an intangible non-economic injury)).

---

[4] Defendants also argue that Plaintiff has failed to allege statutory standing under California Business and Professions Code § 17204. This Court previously found that Plaintiff had adequately pled standing as related to a variety of labor code violations, including out-of-pocket expenses, reimbursement requests, and a failure to compensate Defendant for excess hours worked. Dkt. No. 9.

6

## B.     Whistleblower Retaliation – Second Cause of Action

Plaintiff's second cause of action asserts a claim for whistleblower retaliation. Amended Compl. at 12.  California Labor Code Section 1102.5 is a whistleblower statute, the purpose of which is to encourage workplace whistle-blowers to report unlawful facts without fear of retaliation.  *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287 (2006).  The statute reflects a "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation."  *Green v. Ralee Eng. Co.*, 19 Cal. 4th 66, 77 (1998).

Courts analyzing claims under Section 1102.5 apply the *McDonnell-Douglas* burden shifting framework.  *Ferretti v. Pfizer Inc.*, No. 11-cv-04486, 2013 WL 140088, at *8 (N.D. Cal. Jan. 10, 2013); *Canupp v. Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 789 (E.D. Cal. Apr. 20, 2016).  Under this framework, the plaintiff must first establish a prima facie case, which requires that plaintiff show that "(1) he or she engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the two."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).  If a plaintiff successfully establishes their prima facie case, the "burden of production, but not persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000).

### 1.     Protected Activity

Plaintiff alleges that he reported ADT wrongdoing to five separate persons above him.  On July 22, 2015, Thibodeau sent a letter to Kurt Miller, Regional General Manager of California alerting him to management practices being practiced in San Diego that were "immoral, unethical, and unlawful." Cole Decl. ¶ 12, Ex. D.  Tricia Cole completed a "Conversation Record" where she took notes regarding interviews she conducted with Plaintiff on July 28 and August 12, 2015.  Cole Decl. ¶ 13, Ex. E.

Thibodeau challenges several allegedly illegal activities such as the (1) sales agent practice of crumpling paper over a telephone mouthpiece when the agent mentioned the name ADT; (2) the use of the "billboard approach" where ADT sales representatives would offer a free security system in exchange for placing an ADT sign in the homeowner's yards, and omitting any mention of the need to sign up for a two-year monitoring agreement to get the "free" security system; (3) an alleged ADT practice where ADT would provide ADT Dealers with Thibodeau's "leads." Thibodeau Decl. ¶¶ 14-17. Mr. Thibodeau complained to Sales Manager Robert Harris about the use of the "billboard approach" and was granted permission to make corrections in his approach to "remove its illegal elements." *Id.* ¶ 17.

Defendant argues that Thibodeau has not established that he has engaged in a "protected activity" as he has never reported his complaints of illegal activity to any governmental agencies, filed any complaint in court, participated in company or governmental investigations, served as a witness, spoken to the government, or put into writing his complaints.

Section 1102.5(b) requires the disclosure of a violation of a state or federal regulation or local, state, or federal rule or regulation, not merely improper conduct. *See Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1384-85 (2005). Beginning in 2014, this disclosure could be made to either a "government or law enforcement agency" or to "a person with authority over the employee" or "to another employee who has authority to investigate, discover, or correct the violation. . ."[5] Plaintiff must demonstrate a "reasonably based suspicion of illegal activity." *Love v.*

---

[5] 2013 amendments added "internal" disclosure as a category of people to whom the disclosure could be made. Prior to this, the statute only accounted for statements made to government or law enforcement agencies. *See* Cal. Labor Code § 1102.5; *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016) ("Under the 2013 version of § 1102.5, only complaints or reports made to a governmental agency are protected; complaints or reports made "internally" to the employer are not protected.").

*Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004) (concluding that plaintiff lacked foundation for the reasonableness of his belief by failing to cite to "any statute, rule, or regulation that may have been violated by the disclosed conduct.").

Plaintiff has not adequately articulated how ADT's behaviors violated any local, state, or federal statutes. Exhibits D-G attached to the Declaration of Tricia Cole reveal that Plaintiff complained about a series of employment related grievances, but has never alleged any violations of particular local, state, or federal statutes.

Specifically, Thibodeau asserts that he complained about an instruction from Paul Singh to crumple paper while leaving a telephone message in order to increase call backs. Thibodeau Decl. ¶ 14; Amended Compl., Ex. 8. However, Plaintiff has failed to identify the superior to whom he complained about Singh's paper crumpling instruction. Moreover, Thibodeau has wholly failed to identify any federal or state law that was violated by this practice. Accordingly, this alleged complaint cannot be the basis of a protected activity claim. *See* Thibodeau Decl. ¶ 14.

Next, with regard to the use of the "billboard approach," Thibodeau describes this practice as one he learned at a Dealer Klatch as a way to "get in the door." *Id.* ¶ 15. The practice involved telling home owners that ADT would "give them a free security system if they would let us place an ADT sign in their yards, like a mini billboard." *Id.* ¶ 16. The salesperson would withhold the fact that the customer was required to sign-up for a two year monitoring agreement in order to get the "free" system. *Id.* ¶ 17. The two-year requirement was only revealed after the salesperson was already in the home where it was harder for customers to say no. *Id.* ¶ 17.

This unethical means to enter the house—which was reported to his Sales Manager Robert Harris—is one Thibodeau has pointed out as a potentially misleading sales technique, but he has not identified how this sales activity violated consumer protection statutes or other such laws. *See id.* ¶ 17. The Court observes that this technique, while

initially misleading, provides pre-sales disclosures and ample room for consumer choice. Moreover, the statute requires that the plaintiff must have a legal foundation for a reasonable suspicion of illegal activity, not merely a suspicion of "improper conduct." *See Patten*, 134 Cal. App. 4th at 1384-85.

Finally, with regard to Mr. Singh providing company leads to dealers instead of his sales representatives, plaintiff has not identified how this employment grievance violated any laws. *See* Thibodeau Decl. ¶¶ 18-32. For example, even if the Court accepted the truth of Plaintiff's assertions, it is entirely possible that leads were provided to ADT dealers in an entirely legal manner. Because he has failed to provide a legal foundation for his suspicions of illegal activity, Plaintiff has failed to show that he reported a reasonably based suspicion of illegal activity sufficient to constitute a protected activity. *See Fitzgerald v. El Dorado Cty.*, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015) ("To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed.").

Accordingly, plaintiff has failed to meet his burden to show that he engaged in any protected activity, and thus has failed to establish a prima facie case of whistleblower discrimination. *Love v. Motion Industries, Inc.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) ("Plaintiff's disclosure does not meet the standard for protected activity under Section 1102.5(b), because the disclosed activity does not violate any federal or state statute, rule, or regulation."); *Greer v. Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 989 (N.D. Cal. 2012) ("The protection afforded whistle-blowers under Section 1102.5 is not extended to general complaints made about the work environment.").

### 2. Adverse Employment Actions and Causation

Had plaintiff shown he engaged in a protected activity, plaintiff would be able to show both adverse employment actions and causation. In *Patten v. Grant Joint Union*

*High School Dist.*, 134 Cal. App. 4th 1378, 1388 (2005), the Court of Appeal held that the definition of "adverse employment action" under FEHA as defined in *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005), should also apply in the context of Section 1102.5. Under that definition, an action is an "adverse employment action" when it "materially affects the terms and conditions of employment." This test encompasses not only "ultimate employment decisions," but also the "entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Patten*, 134 Cal. App. 4th at 1387. However, "[m]inor or relatively trivial adverse actions by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee do not materially affect the terms or conditions of employment." *Id.*

Plaintiff argues that he was subjected to several forms of adverse employment actions, including that ADT retaliated against Plaintiff by (1) issuing a series of written warnings; (2) denying Plaintiff a promotion;[6] (3) denying Plaintiff a transfer;[7] (4) overwhelming Plaintiff with non-unit, non-SG, and non-commissionable activities; (5) assigning him low-yield appointments; (6) circumventing his resignation by delaying payment of monies owed and (7) singling Plaintiff out as pre-text for whistleblower retaliation. Opp. at 10-13. Under the *Patten* test, several of ADT's activities—such as the issuance of warnings, denial of promotions, denial of transfer, and denial of good

---

[6] In late June 2015, San Diego Residential High Volume Sales Manager Robert Harris left his employment, creating an opening for a management position that Thibodeau applied for. *Id.* at 104. At his deposition, Plaintiff admitted that the candidate selected for the position, Brian Auerbach, had more sales-related and supervisory experience than he did. Thibodeau Depo. at 258:21-259:23.

[7] On or about August 2015, Plaintiff requested a transfer out of the San Diego area. The transfer request was denied on September 15, 2015 because Thibodeau was ineligible for a transfer as he had a written warning in his file and thus was not in good standing. Ex. 11-12. Despite the policy, Peter Beatty granted Thibodeau approval for a transfer, but also informed him that it could take a year or more for a transfer opportunity to arise. Thibodeau Decl. ¶ 103.

work—likely constitute "adverse employment actions" because these actions could have "materially affect[ed]" plaintiff's "job performance or opportunity for advancement" in his career. *Patten*, 134 Cal. App. 4th at 1387.

Assuming arguendo that Plaintiff had established a protected activity, Plaintiff has arguably established a "causal link." Claims of whistleblower harassment and retaliatory termination may not succeed where a plaintiff "cannot demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment by [the employer]." *Turner v. Anheuser–Busch, Inc.*, 7 Cal. 4th 1238, 1258 (1994). The alleged adverse employment actions took place after Thibodeau revealed the dealer issues to Mr. Harris (June 2015) and after he complained about the Billboard approach (April 2015). Thibodeau Decl. ¶ 17; 25. For example, Thibodeau asserted that he received several warnings in July and September of 2015, a relatively short period of time after he would have reported wrongdoing. *See Morgan v. Regents of the University of California*, 88 Cal. App. 4th 52, 69 (2000) (causal link may be established by circumstantial evidence such as proximity in time between protected activity and alleged retaliation).

Nonetheless, the Court concludes that Thibodeau cannot show a prima facie case of whistleblower discrimination because he has not articulated facts indicating that he engaged in a protected activity.

### 3. Employer's Legitimate Nondiscriminatory Reason for the Challenged Action

While the Court need not reach the employer's legitimate nondiscriminatory reason for the challenged action, the Court observes that Defendant has presented adequate, non-pretextual reasons for some of its potential adverse employment actions. For example, Plaintiff was denied a transfer because he was not in good standing due to a written warning, and because he was regularly not meeting his quotas. *See, e.g.*, Thibodeau Depo. at 264:11-25. Further, Plaintiff was denied a promotion because he was not qualified for

the position, in comparison to the candidate ultimately hired. *See id.* at 258:21-259:23.

Plaintiff has not adequately demonstrated that these legitimate nondiscriminatory reasons are pretext. *See McRae v. Dep't of Corrections & Rehab.*, 142 Cal. App. 4th 377, 389 (2006) (Plaintiff must demonstrate "specific" and "substantial" evidence of pretext and cannot establish this burden by simply showing that ADT's actions were "wrong, mistaken, or unwise."). Mere repetition of the claim that these actions were pretext is not specific and substantial evidence of pretext. *See, e.g.*, Opp. 10-14. Moreover, Plaintiff's own evidence suggests that other members of ADT's workforce—including James Brady— were denied transfers because of written warnings, suggesting that ADT's explanations are not pretext. *See* Brady Decl. ¶ 8 ("The Custom Home Division Sales Manager said he wanted me on his team. A few days after I applied for the position, I was issued a written warning and told that because of the written warning I could not transfer to the Custom Home Division.").

Accordingly, the Court will **GRANT** summary judgment as to Plaintiff's Second Cause of Action.

### C.     Distribution of Customer Information – Third Cause of Action

Plaintiff's Third Cause of Action alleges that Defendant ADT distributed and threatened to distribute the personal and private information of its customers and prospective customers to third-party vendors. Amended Compl. at 20.

The Court will grant summary judgment because (1) Plaintiff has not demonstrated Article III standing and (2) Plaintiff has not articulated any legal claim supported by evidence. To satisfy the "injury in fact" requirement of standing, plaintiffs must allege an imminent threat of concrete injury, and must distinguish themselves from the public at large by demonstrating that the alleged injury "affect[s] [them] in a personal and individual way." *Defenders of Wildlife v. Lujan*, 504 U.S. 555, 560 n.1 (1992); *Warth v. Seldin,* 422 U.S. 490, 498 (1975) ("[T]he threshold question in every federal case ... is whether the

plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of the federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."). As Thibodeau is not an ADT customer, he lacks standing to bring a claim on behalf of customers and prospective customers because he is not affected by any injury in a "personal and individual way." *See Defenders of Wildlife*, 504 U.S. at 560 n.1. In his motion for summary judgment, Thibodeau has pivoted from the allegations in the complaint and apparently seeks to also include the "personal information of Plaintiff" in his claim.[8] Plaintiff argues—without any basis in law—that he "owned" the information contained in Plaintiff's customers' signed contracts, until ADT "accepted" the systems sold. The Court is not persuaded that Thibodeau had any particularized injury from any alleged violation of ADT customers' privacy. Further, Plaintiff has not articulated a viable legal claim under which this claim may be brought. Plaintiff has cited no statutes or other authority indicating a private right of action—for a non-customer—on this cause of action. Accordingly, the Court will **GRANT** Summary Judgment as to Plaintiff's Third Cause of Action.

### D. Vehicle Cost Reimbursements – Fourth Cause of Action

Plaintiff's fourth cause of action seeks relief for ADT's alleged failure to properly indemnify him through vehicle cost reimbursements pursuant to California Labor Code section 2802(a). Amended Compl. at 21. Under this section, an employer must indemnify its employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . ." Cal. Labor Code § 2802(a). The purpose of the Section is to "prevent employers from passing their operating expenses on to their employees." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 562 (2007).

---

[8] Raising factual allegations for the first time on summary judgment is insufficient to present the claim to the district court. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (citations omitted); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

14

The California Supreme Court has held that an employer is obliged by Section 2802 to indemnify its outside sales representatives for automobile expenses actually and necessarily incurred in performing employment-related tasks. *Id.* at 567.

ADT reimburses its California Sales Representatives through the Runzheimer Plan of Vehicle Standard Costs ("Runzheimer"). Perlman Decl. ¶ 2-3. This system includes a "fixed rate" of reimbursement, coupled with a "variable rate" of reimbursement. Perlman Decl. ¶ 4. The fixed rate is based on the costs associated with owning a vehicle such as insurance or license and registration. *Id.* The Runzheimer system's variable rate is based on fuel prices, recommended maintenance, and normal tire wear. *Id.* Employees enrolled in Runzheimer automatically receive the fixed rate monthly allowance but per-mile reimbursement is dependent on an employee logging miles into the system, for which an email reminder would go out if they did not complete this trip information on a timely basis. *Id.* ¶ 5, 6. Plaintiff stopped submitting reimbursement requests in early 2015, but continued to be paid the fixed rate reimbursement despite his failure to complete mileage time entries. Thibodeau Depo. 146:22-147:1-5; 181:8-14; Perlman Decl. ¶ 7, Ex. I. Plaintiff was aware of the Company's policy of requiring logging mileage to be reimbursed. Thibodeau Depo. 147:25-148-9.

ADT asserts that Thibodeau does not have a palpable Section 2802 claim because he was reimbursed for all mileage submitted during his employment, and further still received a fixed mileage reimbursement rate despite his failure to submit reimbursement requests. Defendant asserts that Plaintiff received a reasonable reimbursement rate based on the calculations in the Runzheimer system. MSJ at 28-29. Plaintiff raises a plethora of issues with the Runzheimer system including low reimbursement rates, inaccurate calculations, and the program's requirement to purchase a new vehicle.

Defendant primary argument raises what other Courts have deemed the "Exhaustion Defense"—the argument that an employer has no duty to indemnify

pursuant to § 2802 until an employee first makes a request for reimbursement with the employer.  *See Stuart v. Radioshack*, 259 F.R.D. 200, 202 (N.D. Cal. Aug. 28, 2009).

In *Stuart v. RadioShack*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009), the Court held that for purposes of § 2802(a):

> "before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense.  Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense."

The Court in *RadioShack* later observed that California law "does not necessarily require reimbursement where there has been no request," and that "from a practical standpoint, it makes sense that the employee provide some request for and information about reimbursement."  *Stuart v. Radioshack*, 2009 WL 281941, at *16-17 (N.D. Cal. Feb. 5, 2009).[9]  However, the Court further observed that "if the employer made it futile for the employee to make a claim (e.g., because the employer actively discouraged employees from making reimbursement claims), then the employee would have a § 2802 claim even if he or she had never formally made a claim."  *Id.* at *17.  *See also Melgar v. CSk Auto, Inc.*, 2015 WL 9303977, at *5 (N.D. Cal. 2015) (noting that "the Court rejected Radioshack's contention that an employer could not be held liable for violating § 2802 unless the employee had first made a request for reimbursement").

Here, plaintiff states that the Runzheimer system involved "laborious submission requirements."  Opp. at 30.  An arduous software system could arguably have made it

---

[9] In follow-up rulings, Judge Chen found that RadioShack could not assert a waiver defense to a Section 2802 claim.  *Stuart v. Radioshack Corp.*, 259 F.R.D. 200 (N.D. Cal. 2009) (citing Cal. Labor Code § 2804).  Similarly, the Court found that laches and estoppel were not applicable defenses to that § 2802 claim.  *Id.* at 201.  *See also Melgar*, 2015 WL 9303977, at *6.

"futile" for Plaintiff to have made a reimbursement claim. Further, Plaintiff argues that the Runzheimer program required, as a condition for reimbursement, the purchase of a new vehicle to qualify for reimbursement.[10]  Moreover, unlike in *Radioshack*, ADT—based on the nature of Thibodeau's work and past mileage reimbursement requests—had actual and constructive notice that its High Volume Sales Representatives would regularly require reimbursement for the use of private vehicles in the course of their employment.  *See Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1000-01 (S.D. Cal. 2014) (Curiel, J.) (finding that defendant was not liable for failure to reimburse plaintiff because there was no evidence defendant knew or had reason to know that Plaintiff had incurred business-related expenses); *Radioshack*, 641 F. Supp. 2d at 903 (test focuses on whether "an employer either knows or has reason to know that the employee has incurred a reimbursable expense.").

The Court concludes that there is a genuine dispute of material fact whether Plaintiff was adequately reimbursed for his actual expenses under Section 2802 of the California Labor Code.  Thibodeau raised significant issues with the ADT reimbursement system including (1) a low per mile rate of reimbursement; (2) inaccurate mileage calculation; (3) insufficient depreciation; (4) the use of a "standard" vehicle rather than the operating costs of plaintiff's "actual vehicle"; (5) arduous mileage submission processes; (6) the requirement to purchase a new vehicle in order to qualify for reimbursement.  Thibodeau Decl. ¶¶ 73-82.  He asserts that he spent as much as $20 to $30 per appointment and spent additionally on other vehicle expenses for which he was not properly reimbursed.  Thibodeau Decl. ¶ 51.  Meanwhile, Defendant has merely presented evidence of the existence of the Runzheimer's system and included as evidence

---

[10] ADT submitted the Declaration of Howard Perlman, Vice President of Total Rewards, who described how the Runzheimer program worked, but did not rebut Thibodeau's issues with the system, including, for example, the requirement to purchase a new vehicle to qualify for reimbursement *See* Perlman Decl. ¶ 1-7.

a possibly inaccurate statement of the Runzheimer policy—dated March 6, 2017, long after Thibodeau resigned from ADT—that includes methodologies that may not have been relevant at the time of Thibodeau's employment. *See* Ex. H (Runzheimer program description dated March 6, 2017 discussing *inter alia* that Plaintiff could use Equo app to simplify mileage reporting). Defendants have not shown that the Runzheimer program was a reasonable estimate of Plaintiff's "necessary expenditures . . . incurred by the employee in direct consequence of the discharge of his or her duties." *See Gattuso*, 42 Cal. 4th at 570. At a minimum, Plaintiff may be entitled to additional variable expenses for which he did not request reimbursement.

Given the statutory preference for reimbursement, a genuine issue of material fact remains as to whether Thibodeau has been adequately reimbursed to the fullest extent allowed under Section 2802. *See Melgar*, 2015 WL 9303977, at *10 (policy to pay reimbursement "only if the employee first made a request for reimbursement" was a "potentially unlawful policy under the Court's *Stuart* analysis."); *Gattuso*, 42 Cal. 4th. at 569 ("If the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use . . . the employer must make up the difference."); Cal. Labor Code § 2802(a) ("An employer *shall* indemnify. . ."). Accordingly, the Court will **DENY** Defendant's Motion for Summary Judgment on Plaintiff's Fourth Cause of Action.

### E. Overtime and the "Outside Salesperson" Exemption – Fifth Cause of Action

Plaintiff's Fifth Cause of Action alleges that ADT caused Thibodeau to work more than 8 hours a day and more than 40 hours a week during the course of his employment. Amended Compl. at 26. Under California law, an employer's obligation to pay overtime is governed by the California Labor Code and by wage orders promulgated by the Industrial Welfare Commission ("IWC"). The IWC is the "state agency empowered to formulate

regulations (known as wage orders) governing minimum wages, maximum hours, and overtime pay in the State of California." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 795 (1999). The wage orders remain in effect despite the legislature's defunding of the IWC in 2004. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1102 n.4 (2007). Wage Order 4-2001 applies to professional, technical, clerical, mechanical, and other similar occupations but has a clear exemption for outside salespersons. Cal. Code Regs. tit. 8, § 11040(1)(C) ("The provisions of this order shall not apply to outside salespersons."). Part 4, Chapter 1 of the California Labor Code opens by stating that the "provisions of this chapter . . . shall not include any individual employed as an outside salesman." Cal. Labor Code § 1171. Wage Order 4-2001 defines an outside salesperson as one "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Wage Order No. 4-2001. California takes a "purely quantitative approach" that focuses on whether the employee spends more than half of the workday engaged in sales activities outside the office. *Duran v. U.S. Bank Nat. Ass'n*, 59 Cal. 4th 1, 26 (2014). The exemption requires scrutiny of both the job description and an employee's own work habits. *Id.* The trial court must inquire "first and foremost, how the employee *actually* spends his or her time." *Id.* (emphasis in original).

Under California law, exemptions from statutory mandatory overtime provisions are narrowly construed. *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995). The assertion of an exemption from the overtime laws is an affirmative defense and the employer bears the burden of proving the employee's exemption. *Nordquist*, 32 Cal. App. 4th at 562. Determining whether an employee is an exempt outside salesperson is "a mixed question of law and fact." *Ramirez,* 20 Cal. 4th at 794.

In *Duran v. U.S. Bank Nat. Association*, 59 Cal. 4th 1, 53 (2014), Justice Liu, concurring in the decision, stated that *Ramirez* "did not say that the test boils down to

whether a particular employee actually spends more than 50 percent of his or her working hours on outside sales." Rather, he asserted that the test established in *Ramirez* emphasizes what the "*realistic* requirements of the job" are. While the primary consideration is "how the employee actually spends his or her time," *Ramirez* also states that it would "[not] be wholly satisfactory" to rely solely on the "average actual hours the employee spent on sales activity." *Id.* Accordingly, the Court is entitled to rely, in part, on the realistic requirements of the job as articulated by an employer's realistic expectations. Both the actual hours Thibodeau spent on sales activity and the employer's expectations support the conclusion that there is no genuine dispute as to any material fact that Thibodeau was properly classified as an "outside salesperson" by ADT.

Federal courts in the Ninth Circuit have found it permissible to look to federal law to determine whether an employee was an outside salesperson under California law. This is particularly important because courts have observed that there is a "dearth of California cases addressing what it means to 'sell.'" *Brody v. AstraZeneca Pharm., LP*, No. CV06-6862ABCMANX, 2008 WL 6953957, at *5 (C.D. Cal. June 11, 2008).[11] The Court in *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756-58 (W.D. Mich. 2003) identified several factors that an array of federal courts had found probative of an employee's status as an outside salesperson including that: (1) "[T]he job was advertised as a sales position and the employee was recruited based on sales experience and abilities"; (2) "Specialized sales training"; (3) "Compensation based wholly or in significant part on commissions"; (4) "Independently soliciting new business"; (5) "[R]eceiving little or no direct or constant supervision in carrying out daily work tasks." *See also Brody*, 2008 WL 6953957 at *6 (applying factors to California "outside salesperson" exemption); *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1262 (C.D. Cal. 2007) (same).

---

[11] Federal courts have also determined that there is no difference between federal and state law regarding the qualitative issue of what kind of activity constitutes "selling." *Brody*, 2008 WL 6953957, at *6.

The Court concludes that Thibodeau was properly classified as an "outside salesperson" based on: (1) the Federal *Nielsen* factors; (2) Plaintiff's actual time spent on the job; and (3) Defendant's realistic expectations.

First, the vast majority of the *Nielsen* factors suggest that Plaintiff's role as a "High Volume Sales Representative" was an outside salesperson engaged in sales. Plaintiff participated in specialized sales training. Thibodeau Decl. ¶ 7, 8 (stating that he could not participate in selling ADT systems unless he returned from sales training in Florida). ADT paid Thibodeau commissions on sales. *Id.* ¶ 62. Plaintiff independently solicited new business. *Id.* ¶ 88 (claiming he hit self-generated ("SG") performance numbers three times in January, May, and June of 2015). Further, plaintiff appears to have received little supervision in carrying out daily tasks. *Id.* ¶ 94 ("ADT did virtually nothing to assist Sales Reps, including me, to meet our sales quotas"). Moreover, Plaintiff's sales activities appear directed at persuading particular customers to purchase products. *See Dailey v. Just Energy Mktg. Corp.*, 2015 WL 4498430, at *3 (N.D. Cal. July 23, 2015) (An employee is clearly engaged in sales activity and not general promotion of a product if he or she "directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so.").

Second, Plaintiff's time records support the conclusion that he spent more than fifty percent of his "actual" time on sales related activities. Defendant objects to Thibodeau's time calendar on the basis of authentication and because Plaintiff has not indicated that the time entries on the calendar are in any way accurate. Dkt. No. 63-1 at 4. Plaintiff argues—based on the calendar and a summary he prepared of these time records—that 80% of his time was spent in activities unrelated to "selling" and that only 20% of his activities constituted sales-related activities. Opp. at 19.

Providing Plaintiff the benefit of the doubt, the Court has reviewed these records and concludes that these records actually provide substantial support for Defendant's

contention that Thibodeau spent the majority of his time engaged in outside sales and sales-related activities. In making this determination, the Court concludes that time spent preparing for sales,[12] travel time,[13] appointments with customers, time spent canvassing neighborhoods and knocking on doors, meetings with residential developers, time spent dealing with paperwork, and customer installations[14] constitute time engaged in the act of "selling." *See* Ex. 7. Further, the Court includes in its determination time spent at Plaintiff's home for sales preparation activities since these activities did not take place at the San Diego office. *See, e.g.*, Ex. 7 (April 28 entry re: "Prep"; May 8 entry re: "prospecting emails"). The Court does *not* include in its determination, *inter alia*, time spent generally promoting ADT,[15] personal administrative time, and time spent for sales calls/meetings in the San Diego office.[16]

For example, Plaintiff's time log for May 20, 2015, involved 1.5 hours of Builder Calls, Travel to Temecula, personal administrative issues, and at least 3.5 hours of

---

[12] Time spent on sales-related activities has been judicially interpreted to constitute time spent selling for purposes of the outside salesperson exemption. *See Pablo v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894 SI, 2011 WL 4413897, at *3 n.2 (N.D. Cal. Sept. 22, 2011) ("The test also includes consideration of activities spent incidental to sales—such as preparation, travel time, and paperwork."); *Ramirez*, 20 Cal. 4th at 801; *Henninghan v. Insphere Insurance Solutions, Inc.*, 38 F. Supp. 3d 1083, 1106 (N.D. Cal. 2014).

[13] Plaintiff disputes that travel time does not constitute time spent selling. This position is mistaken. *See Ramirez*, 20 Cal. 4th at 802 ("[i]f a salesperson must travel one hour to destination A in order to attempt a sale, then surely the most reasonable interpretation of the wage order is to count the hour of travel time as time spent 'selling.'").

[14] The Court concludes that time spent supporting customer installations in this particular context constitutes time spent "selling" as it is necessarily a part of efforts directed at persuading particular customers to purchase a product and to consummate that specific sale. This is particularly true in light of the fact that the ADT compensation plan does not pay commissions until "the installation is complete." *See* Ex. 9; *Dailey*, 2015 WL 4498430, at *3; *Nielsen*, 302 F. Supp. 2d. at 759.

[15] Time spent generally promoting the ADT brand is not time spent "selling." *See Delgado v. Ortho-McNeil, Inc.*, 2009 WL 2781525, at *3 (C.D. Cal. Feb. 6, 2009), *aff'd*, 476 Fed. App'x 133 (9th Cir. 2012) ("For example, a manufacturer's representative who visits shops to put up displays and posters, rearrange merchandise, or remove spoiled stock is performing promotional work, not sales work.").

[16] *See Ramirez*, 20 Cal. 4th at 789 (requiring sales activities to take place "outside the workplace").

appointments, and a further travel time of one hour. All told, while Plaintiff claims only three hours of this time is exempt, it is clear that the vast majority of plaintiff's working day—i.e. more than 50%—consisted of sales-related activities such as calls and travel to the sales calls. *See* Ex. 7 at 36; Ex. 8 at 43. *See also* Ex. 7 at 37 (May 30, 2015 where almost all non-personal calendar entries involved installations, travel, or sales appointments).[17] Accordingly, the Court concludes—on the basis of these time records—that Thibodeau spent more than fifty percent of his actual time engaged in sales and sales-related activities and was properly identified by ADT as an exempt "outside salesperson."

Finally, ADT's "realistic expectations" further support a finding that Thibodeau's role was that of an outside salesperson. *See Duran*, 59 Cal. 4th at 53. The ADT Compensation Plan describes Plaintiff's role as being "responsible for securing profitable package *sales and upgrades* to new ADT Residential customers through company provided leads as well as self-generated lead efforts." Ex. A at ADT000166. Thus, ADT's realistic expectation for High Volume Sales Representatives was centered on sales. Moreover, another federal court has classified a similar sales position at ADT as an exempt outside salesperson. *See Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1123, 1131 n.2 (E.D. Cal. 2015) (finding ADT commission sales representative was likely an "outside salesperson" due to her job responsibilities and frequent travel to residences away from the employer's place of business).

Accordingly, there is no genuine dispute of material fact that Plaintiff spent a majority of his time on sales-related activities. Plaintiff was properly classified as "exempt" as an outside salesperson, and is therefore not entitled to overtime payments

---

[17] To the extent that plaintiff's time records could be read to support the notion that plaintiff spent less than fifty percent of his time engaged in outside sales, the Court observes that the reliability of these records is somewhat questionable. For example, plaintiff's purported summary of his time does not always accurately reflect the time entries on the salesforce calendar. *Compare* Ex. 8 (May 13th entry states that 5:00-9:00 PM was entirely customer care) with Ex. 7 (May 13th entry shows personal administrative time, a "triage" visit, and travel time between 5:00-9:00 PM).

under California law.  The Court will **GRANT** summary judgment on Plaintiff's Fifth Cause of Action.

### F.    Rest Days – Sixth Cause of Action

#### 1.    Exhaustion of Administrative Remedies – Labor Code Section 522

Plaintiff's Sixth Cause of Action alleges that Plaintiff worked more than six days in seven in violation of California Labor Code Section 552. Amended Compl. at 29. The Court finds that Plaintiff cannot proceed on this cause of action because he has failed to exhaust administrative remedies under the PAGA.

California Labor Code Section 552 states that no employer of labor shall cause his employees to work more than six days in seven.  Defendant argues that Thibodeau has failed to exhaust administrative remedies pursuant to Section 2699 of the California Labor Code.  Thibodeau responds in his Opposition that his complaint is not filed under the PAGA and that this is not a PAGA case.  Opp. at 27.  The Court agrees with Defendant's view and accordingly will grant summary judgment on this basis to Defendant.

The proper vehicle for bringing a claim under Section 552 is through the California Private Attorney Generals Act as enacted in Section 2699.3—Requirements for Aggrieved Employee to Commence a Civil Action. This Act "permits a civil action 'by an aggrieved employee on behalf of himself or herself and other current or former employees' to recover civil penalties for violations of other provisions of the Labor Code." *Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal. 4th 993 (2009) (quoting Cal. Lab. Code § 2699(a)).  Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3(a) requiring the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation.  If the agency notifies the employee and the employer that it does not intend to investigate . . . or if the agency fails to respond within 33 days, the employee may then

24

bring a civil action against the employer. Cal Labor Code § 2699.3(a)(2)(A). Section 2699.5 enumerates the sections of the Labor Code that are subject to an administrative exhaustion requirement. *See* Cal. Labor Code § 2699.5. Section 552 is included in this list. *See id.*

Here, Plaintiff has not presented evidence showing that he provided written notice to the Labor and Workforce Development Agency. Naouchi Decl. ¶ 4 ("At no time has Plaintiff served my office or ADT with a copy of a complaint or correspondence filed with the California Labor Workforce Development Agency, related to his employment with ADT."). As a result, he has failed to exhaust his administrative remedies and cannot bring his claim under Section 552. *See Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 383 (2005) ("Under the plain language of the Act, plaintiffs cannot pursue civil penalties for those violations without complying with the pre-filing notice and exhaustion requirements of section 2699.3, subdivision (a)."); *Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261 (9th Cir. 2017) (aggrieved employees seeking remedies under Section 551 and 552 must "exhaust claims administratively before bringing a PAGA action of their own."). Accordingly, the Court **GRANTS** Summary Judgment to Defendant on Plaintiff's Sixth Cause of Action.

### G. Wage Statements – Seventh Cause of Action

Plaintiff's Seventh Cause of Action alleges a failure to provide Plaintiff with wage statements as required by California law. Amended Compl. at 30. California Labor Code § 226(a) requires employers to provide accurate itemized wage statements to employees that provide nine pieces of information. A claim for damages requires proof of: (1) a violation of § 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury. *See Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1225 (S.D. Cal. 2015).

An electronic wage statement can satisfy an employer's obligations under § 226(a) under certain circumstances. *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1226 (S.D. Cal.

2015).  In 2006, the California Department of Labor Standards Enforcement ("DLSE") issued an opinion letter approving a plan to implement an electronic wage-statement system, subject to certain conditions.  The letter, which is non-binding but nevertheless persuasive,[18] allows electronic wage statements so long as employees retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee.  In *Apodaca v. Costco Wholesale Corp.*, 2012 WL 12336225, at *2 (C.D. Cal. 2012), the Court relied on the DLSE interpretation to find that a genuine factual dispute existed as to whether an employee could easily access the wage statements and easily convert the statements into hard copies.[19]

Defendant ADT initially provided wage statements in paper form, then in January 2015 began providing provided the wage statements on an electronic basis.  Cole Decl. ¶ 6.  Plaintiff argues that ADT "deliberately and maliciously failed to provide Plaintiff with wage statements." Opp. at 23.  It is true that Plaintiff was aware that electronic paystubs were available on the ADT electronic system and made only a single attempt to access his electronic paystub. *See* Thibodeau Depo. at 267:1-15 ("I only tried once.").  However, he subsequently replied to ADT's email describing his problem with electronic access and made a request to receive printed wage statements. Thibodeau Decl. ¶¶ 35-37; Ex. 13.  A few days later, Thibodeau states that his sales manager Robert Harris "pressured" plaintiff to "sign a document reversing [his] request to receive printed wage statements."  *Id.* ¶ 38.  ADT subsequently never informed Thibodeau of any progress regarding his inability to access wage statements electronically.  *Id.* ¶ 40.

These facts are supported by the Declaration of Robert Harris, a fellow high volume

---

[18] DLSE interpretations of California statutes are "entitled to [the court's] consideration and respect." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1105 n.7 (2007).

[19] In a subsequent bench trial, the Court eventually found that the employee, Apodaca, could easily access her wage statements and consequently the provision of electronic wage statements did not violate Section 226(a).  *Apodaca v. Costco Wholesale Corp.*, 2014 WL 2533427 (C.D. Cal. June 5, 2014).

sales representative and later Sales Manager for ADT who recalled "Mr. Thibodeau report[ing] difficulties accessing his statements on-line and I recall that he requested by email that he receive printed wage statements. Additionally, I recall receiving instruction by email from an ADT Department I cannot recall, to have Mr. Thibodeau sign a document releasing ADT from having to provide him with Printed wage statements. I have no knowledge regarding where Mr. Thibodeau's email request or the signed release may have ended up." Harris Decl. ¶ 5.[20]

Given the apparent difficulties Mr. Thibodeau faced in requesting and receiving a printed wage statement and the fact that Defendant has not rebutted these facts, a genuine issue of material fact exists as to whether Defendant knowingly and intentionally denied Plaintiff's right to "easily access the wage statements and easily convert the statements into hard copies." *See Apodaca*, 2012 WL 12336225, at *2.[21]

Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment as to Plaintiff's Seventh Cause of Action.

## H. Employee Rights Postings – Ninth Cause of Action

Plaintiff's Ninth Cause of Action alleges that Defendant ADT failed to prominently display a list of employees' rights and responsibilities under whistleblower laws pursuant to Labor Code Section 1102.8. Amended Compl. at 33. Defendant asserts that ADT ensured that all required postings were posted in a conspicuous and accessible area in the San Diego office. Plaintiff agreed that the posters were initially placed in a conspicuous hallway. Thibodeau Depo. at 121:1-17. During a renovation period, the posters were moved elsewhere. *Id.* at 121:11-21; Smith Decl. ¶ 3. The Court need not resolve whether

---

[20] These statements suggest a genuine dispute of material fact as to whether Costco *knowingly and intentionally* violated Section 552. *See Apodaca*, 2012 WL 12336225, at *3 (citing penalty provisions under Cal. Labor Code Section 226(e)).

[21] The failure to obtain a hard copy of wage statements from a payroll clerk constitutes a sufficient injury. *See Apodaca*, 2012 WL 12336225, at *3.

a genuine dispute of material fact exists as Plaintiff's claim fails as a matter of law because there is no private cause of action under Labor Code Section 1102.8.

California Labor Code Section 1102.8 requires that employers prominently display in lettering larger than 14 point font a list of employees' rights and responsibilities under California's whistleblower laws, including a whistleblower hotline telephone number.  Cal. Labor Code § 1102.8.

The Court concludes that no private cause of action under Labor Code Section 1102.8 exists. "If the Legislature intends to create a private cause of action, we generally assume it will do so 'directly[,] . . . in clear, understandable, unmistakable terms . . . ." *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.,* 70 Cal. App. 4th 55, 62-63 (1999) (*citing Moradi-Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal. 3d 287, 294-95 (1988)).  No case cited in either WestlawNext or LexisAdvance appears to have ever successfully brought or analyzed a private claim under 1102.8.  In addition, the PAGA specifically states that "no action shall be brought under this part for any violation of a posting, notice, agency reporting, or filing requirement of this code," strongly suggesting that no private right of action exists as to this claim.  Cal. Labor Code § 2699(2). [22]

Finally, nothing in the legislative history of Section 1102.8 indicates that the legislature intended to create a private right of action.  In the Legislative Counsel's Digest for the 2003 Bill SB 777, discussion regarding Section 1102.8 is clearly separated from the provisions involving Section 1102.5 which does include a private right of action.  *See* 2003 Cal. Legis. Serv. Ch. 484 (S.B. 777) (legislative history regarding Section 1102.8 limited to an isolated paragraph stating that "[t]his bill would also require an employer to display, as specified, a list of an employee's rights under whistleblower laws, including the telephone number of the hotline created by the bill.").

---

[22] Further evidence that section 1102.8 does not include a private right of action is found in the fact that it is not included in section 2699.5, the section which sets out the requirements for aggrieved employees to commence a PAGA civil action under the labor code law.

Accordingly, because there is "no clear, understandable, and unmistakable" indication that the legislature intended to create a private right of action, the Court will find that no private right lies with Section 1102.8. *See Ruiz v. Paladin Grp., Inc.*, No. CV 03-6018-GHK(RZX), 2003 WL 22992077, at *2 (C.D. Cal. Sept. 29, 2003) (finding no private right of action arises under Cal. Labor Code § 558); *Vikco*, 70 Cal. App. 4th at 62 (1999) ("[A] private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages"). The Court will **GRANT** Defendant's Motion for Summary Judgment as to Plaintiff's Ninth Cause of Action.

## CONCLUSION

For the foregoing reasons, the Court will:

- **GRANT** Defendant's Motion for Partial Summary Judgment as to:
  - Plaintiff's Second Cause of Action re: Whistleblower Retaliation
  - Plaintiff's Third Cause of Action re: Distribution of Customer Information
  - Plaintiff's Fifth Cause of Action re: Overtime Pay
  - Plaintiff's Sixth Cause of Action re: Rest Days
  - Plaintiff's Ninth Cause of Action re: Failure to Post Whistleblower Laws
- **DENY** Defendant's Motion for Partial Summary Judgment as to
  - Plaintiff's First Cause of Action re: the Unfair Competition Law
  - Plaintiff's Fourth Cause of Action re: Vehicle Cost Reimbursements
  - Plaintiff's Seventh Cause of Action re: Wage Statements

Accordingly, what remains in this case are Plaintiff's First, Fourth, Seventh, and Eighth[23] Causes of Action.

---

[23] Defendant's Motion for Partial Summary Judgment did not seek summary judgment as to Plaintiff's Eighth Cause of Action involving Timely Access to Thibodeau's Employee File.

**IT IS SO ORDERED.**

Dated: January 31, 2018

Hon. Gonzalo P. Curiel
United States District Judge