UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON DEL THIBODEAU,<br><br>                      Plaintiff,<br><br>v.<br><br>ADT LLC, d/b/a/ ADT SECURITY SERVICES, a/k/a/ ADT HOLDINGS INC.,<br><br>                      Defendant. | Case No.: 3:16-cv-02680-GPC-AGS<br><br>**MEMORANDUM DECISION FOLLOWING TRIAL AND ORDER FOR ENTRY OF JUDGMENT** |

      Plaintiff Clayton Del Thibodeau ("Plaintiff") brings this civil suit against his former employer, Defendant ADT, LLC ("ADT"). Plaintiff's alleged that ADT engaged in unlawful advertising and solicitation schemes that ran afoul of California's Unfair Competition Law, its Business and Professions Code, as well as the Labor Code. Plaintiff also alleges that ADT failed to properly reimburse him for costs associated with using his personal vehicle while engaged in business activity for ADT; that ADT failed to provide Plaintiff with wage statements during his employment; and that ADT failed to provide Plaintiff timely access to his personnel file.

      Summary judgment narrowed Plaintiff's claims to the latter three issues. These contentions were set for a bench trial, which the Court conducted on January 16, 2019.

1

(ECF No. 126.) Plaintiff proceeded *pro se* while ADT was represented by Lonnie D. Giamela and Rayan Naouchi, of Fisher & Phillips LLP.

Having carefully reviewed the evidence and the arguments of the parties, as presented at trial and in their written submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I. <u>Claim for Mileage Reimbursements</u>

Plaintiff has advanced two causes of action alleging that ADT failed to adequately reimburse him for the costs he incurred in driving and maintaining a vehicle for ADT-related work.

The first claimed cause of action arises under the UCL, section 17200 (the first cause of action in Plaintiff's First Amended Complaint ("FAC")), and the second is based upon a violation of the California Labor Code, section 2802 (the fourth cause of action in the FAC). Because actions under the UCL are derivative of the substantive law upon which they rest, the Court will treat the UCL claim as inseparable of and reducible to the claim under section 2802. *See e.g.*, *Ordonez v. Radio Shack*, No. CV 10–7060 CAS MANX, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) (holding that an UCL claim may be maintained to the extent it is predicated on the § 2802 claim); *McLeod v. Bank of America*, 16-CV-03294-CM, 2017 WL 6373020, at *6 (N.D. Cal. Dec. 13, 2017) ("Plaintiff's UCL claim is entirely derivative of her § 2802 claim.").

### A. Factual Findings

#### 1. Background

ADT is a corporation that provides residential and business electronic security systems, fire protection, and other related alarm monitoring services. Plaintiff worked for Defendant as a Residential High Volume Sales Representative from September 9, 2014 through October 2, 2015.

#### 2. Plaintiff's role with ADT

At ADT, High Volume Sales Representatives like Plaintiff are responsible for securing new sales of portfolio package sales and upgrades to new ADT residential customers. Plaintiff's responsibilities included scheduling appointments with prospective customers, canvassing neighborhoods (knocking on doors and asking customers if they were interested in ADT's products and services), meeting with residential developers at their developments, community promotion events, and travel. (Depo. of Clayton del Thibodeau, dated May 30, 2017, at 44:7-25; 62:19-24.) Although Plaintiff spent his time "almost exclusively in the field, Plaintiff was classified as based out of ADT's Imperial [County] office where Plaintiff attended meetings on a limited basis." (ECF No. 122, at 3.) ADT's Imperial County office had territorial responsibility for both San Diego and Imperial County.

During some months, Plaintiff was almost exclusively doing door-to-door sales, meeting with customers, or traveling to and from locations where he undertook those tasks. Based on the realities of Plaintiff's job, *viz.*, his employment as a person who "customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities," the Court previously concluded that Plaintiff is properly considered an outside sales person. (ECF No. 69, at 19 (quotation marks and citation omitted).)

### 3. The Runzheimer mileage reimbursement plan

ADT reimburses its California-based sales representatives for business mileage through a program called the Runzheimer Plan of Vehicle Standard Costs ("Runzheimer"). Runzheimer is a FAVR—a fixed and variable reimbursement plan—designed to reimburse employees for miles driven on a combination of a fixed monthly allowance and a per-mile reimbursement.

At the beginning of his employment, Plaintiff was told by his manager at ADT that the vehicle he had been driving was too old to qualify for the variable-rate reimbursements, and that he needed a newer vehicle if he wanted to get reimbursed. As a

3

3:16-cv-02680-GPC-AGS

result, Plaintiff purchased a new Nissan Sentry on October 20, 2014 for the express purpose of complying with ADT's mileage reimbursement policies. That Sentry only had four miles on it when Plaintiff purchased it.

Plaintiff testified that he used the Sentry exclusively for ADT business; all personal trips and errands were accomplished with his wife's vehicle. (Trial Transcript, ECF No. 129, at 105.) Plaintiff would use his residence as his home base and travel to and from there as a setting off-point; Plaintiff testified that he would make about four to five trips each day from his house for ADT business, visiting potential customer's houses, canvasing neighborhoods, attending to business at the Imperial County office, among other tasks.

### 4. Plaintiff's manual-input issues

In order to record trip mileage into Runzheimer for reimbursement, Plaintiff had to input each of his trips onto Runzheimer's Web Center.

The manual input process gave Plaintiff a lot of trouble. Runzheimer required Plaintiff to individually record every trip he sought to obtain reimbursement. In order to record a trip, Plaintiff was required to manually enter five pieces of information: the trip date, the trip start time, the starting location, the end location, and the trip purpose. As testified by Plaintiff, the process was laborious, frustrating, and counterintuitive.

The location entries were especially cumbersome. Unless the address entered was recognized by the Runzheimer program, Plaintiff would be booted out of the trip entry and forced to start populating the trip again from the beginning of the entry form. To record an entry after boot-out, Plaintiff would often have to restart the program and research nearby alternative addresses that Runzheimer might recognize instead. These boot-outs would occur with respect to both the start and end location entries, and Plaintiff said that this happened with approximately 10% of all attempted inputs.

Plaintiff estimates that it took him approximately 15 to 20 hours to record each month's worth of entries. Each entry would take approximately ten minutes to fill out when taking into account the time that Plaintiff would be booted out for having input an

4

address that Runzheimer failed to recognize. Taking Plaintiff's Runzheimer submission for the month of October 2014 as representative, Plaintiff would average four trip entries for each day that trips were recorded.

### 5. Plaintiff's theory of improper mileage deductions

Besides the difficulty of recording trip entries, Plaintiff also complained that Runzheimer would improperly deduct commute miles from his submissions. Plaintiff discovered a discrepancy between the trip mileage he input and the miles ADT actually credited toward reimbursement as business mileage. In Plaintiff's experience, an undisclosed number of miles would be subtracted from every day he input entries to account for commute mileage. It is Plaintiff's theory that those deductions would roll over to succeeding days if the original trip date involved a mileage total less than what Runzheimer determined to be the daily commute deduction. Thus, Plaintiff believes that he has started some days off with negative mileage, owing to the carry-over of negative commute miles from the day prior.

### 6. ADT's theory on daily commute deductions

As testified by Tricia Cole, ADT had a policy of not reimbursing outside sales representatives like Plaintiff for commute-time mileage. (ECF No. 129, at 133.) To that end, ADT represented that Runzheimer was programmed to make a daily deduction of commute miles from the total trip mileage, which was obtained by taking the distance between the address which the employee input initially designated to Runzheimer as their "office," and the address corresponding to the employee's "home." (*Id.* at 167.)

Thus, according to ADT, once Plaintiff fed Runzheimer his home address and designated the Imperial County office as his office address, Runzheimer determined that such a route was approximately 27 or 28 miles one way, and would accordingly deduct a total of approximately 54 or 56 miles per day to account for any mileage presumably expended in a round-trip commute between those two points. ADT denies that Runzheimer's daily commute deductions would carry over from one day to the next.

### 7. Plaintiff stops recording entries in Runzheimer

Plaintiff maintained his practice of manually inputting trips on the Runzheimer program from October 2014 up to February 2015.

Thereafter, citing the vagaries of Runzheimer, Plaintiff ceased to make further entries. According to Plaintiff, "for the amount of time I was inputting for the data required," the "return on investment" was simply "not worth it for me to continue inputting data." (ECF No. 129, at 31.) Plaintiff then decided that, "[r]rather than spend 20-plus hours a month inputting a bunch of data to get a fraction of what would reasonably represent my cost for gas alone, I opted to receive the fixed reimbursement of 145 [dollars] or whatever amount it was per month, which required no additional action on my part, and to forego the other element because it was too laborious to use their system." (*Id.* at 74.)

Plaintiff terminated his employment with ADT on October 2, 2015. An odometer reading taken from a maintenance invoice from September 2015 indicated that there were 30,467 miles on Plaintiff's Sentry. (*Id.* at 5.) It is Plaintiff's contention that he should be awarded mileage costs for that number of miles. Besides this odometer reading, Plaintiff offered no additional proof of what miles he drove in his vehicle, and for what purpose. Plaintiff testified that he did not keep any additional documentation because "ADT did not require me to maintain any records of gas usage or any of the other things . . ." (*Id.* at 22.)

ADT credited Plaintiff with a total of 4,575 miles in business mileage for the trips he logged into Runzheimer for the four months between October 2014 to January 2015. (Tr. Exh. at 3.) For that time period, Plaintiff was reimbursed a total of $1,170.87,which reflects $630.92 in variable reimbursement costs, and $539.95 in fixed reimbursement costs. (*Id.*) For the other eleven months during which Plaintiff did not make entries into Runzheimer, Plaintiff was reimbursed $1,223.42 in fixed reimbursement costs, but was not issued any variable reimbursement costs. (*Id.*) To date, ADT has paid Plaintiff a total of $2,394.29 in mileage reimbursements.

**B.     Discussion and Legal Conclusions**

Plaintiff claims that the reimbursement amount he received from ADT was inadequate and in violation of section 2802. He insists that he should have been paid for *all* of the miles lodged on his Sentry—i.e., 30,467 miles. According to Plaintiff, it was unlawful for ADT to deduct commute miles from this number, and disingenuous for ADT to roll-over commute deductions from one day into the next, so that the mileage count for the subsequent day will start in the negative.

With respect to damages, Plaintiff claims a reimbursable amount of $14,667.23, a sum based on a reimbursement rate of 56 cents a mile,[1] minus the amount ADT already reimbursed him during the course of his employment. (ECF No. 129, Trial Transcript, at 3–4.)

### 1. Applicable Legal Framework

Under California law, an "employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Lab. Code § 2802(a). The purpose of this section is "to prevent employers from passing their operating expenses on to their employees." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 554 (2007). The obligation to reimburse under section 2802 is triggered when "the employer either knows or has reason to know that the employee has incurred a reimbursable expense." *Cortes v. Market Connect Grp., Inc.*, No. 14CV784-LAB (DHB), 2015 WL 5772857, at *8 (S.D. Cal. Sept. 30, 2015) (quoting *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009)).

There are three elements to a section 2802 claim: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct

---

[1] Plaintiff testified that he arrived at the 56 cents per mile rate by finding a middle spot between the IRS's reimbursable rate for the time-period in question, i.e., 57.5, and the state's reimbursement rate for the same. (ECF No. 129, at 4.) The IRS's reimbursable rate is found in Trial Exhibit 38, as part of IRS Publication 463, which was issued "for federal income tax purposes, based on national average expenses for fuel, maintenance, repair, depreciation, and insurance . . . ." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569 (2007).

consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary. *Marr v. Bank of Am.*, No. 09-CV-05978 WHA, 2011 QL 845914, at *1 (N.D. Cal. Mar. 8, 2011). The California Supreme Court has held that an employer is obliged by section 2802 to indemnify its outside sales representatives for automobile expenses actually and necessarily incurred in performing employment-related tasks. *Gattuso*, 42 Cal. 4th at 567.

### 2. Plaintiff has established all three elements of a section 2802 claim by a preponderance of the evidence

Applying the three elements of a section 2802 claim to the facts presented at trial, the Court finds that Plaintiff has borne his burden of proof with respect to his claim for mileage reimbursements.

First, neither party disputes that Plaintiff made expenditures and incurred losses in terms of gas expended, maintenance costs, and vehicle depreciation.

Second, Plaintiff has established that his expenditures and losses were incurred as a direct consequence of his discharge of his duties for ADT. Plaintiff obtained his vehicle for the express purpose of being able to get reimbursements for miles driven in pursuit of company business, and testified that he used his Sentry exclusively for ADT-related tasks, such as driving to meet with residential developers and prospective customers.

Although ADT raised a salient point with respect to Plaintiff's lack of proof of the number of miles claimed—i.e., Plaintiff had no evidence except his September 2015 odometer reading. ADT argues that without additional records to show that Plaintiff spent all 30,467 of the claimed miles doing ADT business, Plaintiff necessarily fails to carry his burden of proof. However, the Court does not find the evidentiary lacuna particularly problematic.

The reasons for this are two-fold. As Plaintiff testified, ADT never required him to maintain physical documentation of his miles. Moreover, the applicable law counsels that when employers like ADT elect to reimburse travel costs through the mileage

8

reimbursement method, "the employee need only keep a record of the number of miles driven to perform job duties," and no more. *Gattuso*, 42 Cal. 4th at 569. Where the employer's designated means of recording mileage is so onerous as to preclude an employee from recording entries therein, the fact that the employee can produce no record other than what is displayed on his odometer must be laid at the feet of the employer.

At the same time, the Court has reasons to doubt that all of the 30,467 miles on Plaintiff's Sentry were incurred during the pursuit of ADT-related business. Counsel for ADT pointed out during trial that Plaintiff's assertion that all 30,467 miles were business miles was undermined by a comparison of the odometer reading taken on February 2, 2015 and the miles Plaintiff submitted to Runzheimer up to and including the mileage for the month of February, 2015. ADT pointed out that the Smog and Tune odometer reading indicated a total of 10,505 miles, while Plaintiff's Runzheimer inputs from the months up to that point (for October, November, December, January, and February), only totaled to approximately 8,000 miles. (ECF No. 129, at 174.) Acknowledging the discrepancy, the Court will impose a 20% reduction on the total of number of miles claimed by Plaintiff, and find that Plaintiff has proven 24,373.60 reimbursable miles.

Third, the expenditures or losses claimed by Plaintiff are reasonable and necessary. Plaintiff seeks compensation at a rate of compensation of 56 cents a mile. This mileage reimbursement rate is a hair lower than IRS's reimbursable mileage rate for the applicable period, which is itself a per se reasonable rate. As explained by the California Supreme Court in *Gattuso*, "the federal Internal Revenue Service (IRS) has calculated an automobile mileage rate for federal income tax purposes, based on national average expenses for fuel, maintenance, repair, depreciation, and insurance, and this IRS mileage rate is also widely used and accepted by private business employers for calculating reimbursable employee automobile expenses." *Gattuso*, 42 Cal. 4th at 569.

Thus, taking the number of reimbursable miles (24,373.60), multiplied by the mileage reimbursable rate urged by Plaintiff (56 cents per mile), and subtracting that sum

9

by the amount that ADT had previously reimbursed Plaintiff ($2,394.29), the Court determines that ADT owes Plaintiff $11,254.93 pursuant to section 2802.

### 3. ADT's defenses

Defendant asserted two defenses at trial, neither of which detract from the above conclusion. The first turns on whether commute miles for outside sales representatives like Plaintiff are reimbursable under section 2802. The second concerns whether Plaintiff can be permitted to recover mileage payments for the miles on his odometer absent additional proof. The Court will address them in turn.

#### a. Commute Miles are Reimbursable under section 2802

ADT claims that California law does not require reimbursement of commute miles—i.e., mileage driven to and from an employee's place of work—and that Plaintiff has already been paid for all non-commute miles. Because Plaintiff drove his vehicle from his house to reach the first destination of the day (whether that was the Imperial County office, or a customer's residence) and returned home in the evenings, ADT reasons that Plaintiff should not be compensated for the first and last trips of the day. For this proposition, ADT relies on the California Supreme Court's decision in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) and the Ninth Circuit's decision in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007).

As Plaintiff noted, ADT asserted this argument for the first time at trial. Indeed, as ADT itself acknowledged, neither of the two cases upon which it relies for the proposition were articulated as defenses in the pretrial order, or mentioned in any form therein. Because "[a] pretrial order controls the subsequent course of action unless modified . . . . parties have a duty to advance any and all theories in the pretrial order." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1076–77 (9th Cir. 2005). "Accordingly, a party may not 'offer evidence or advance theories at the trial which are not included in the order or which contradict its terms.'" *Id.* at 1077 (quoting *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981). As relevant to this case, "[a] defendant must enumerate its defenses in a pretrial order even if the plaintiff has the

10

burden of proof." *Id.* Here, the Court holds that ADT's proffered defense—that it need not reimburse commute miles—is waived.

Even assuming ADT preserved its argument, the Court would not find it availing. ADT cites *Morillion* and *Kiewit* for the proposition that commute miles to and from a variable worksite are not reimbursable. However, those decisions do not stand for as blanket a rule as ADT suggests. In *Morillion*, the California Supreme Court held that farm workers were entitled to compensation for the time they traveled on their employer's buses from a central departure point to the fields where they were to work. 22 Cal. 4th at 578. The court distinguished "between travel that an employer specifically compels and controls," and "an ordinary commute that employees take on their own." *Id.* at 587. Time spent doing the former must be compensated; time taken as to the latter need not be, since there is a lower level of control by the employer over "when, where, and how" the employees must travel. *Id.* at 586. And the issues at play in *Kiewit* were nearly identical to the ones in *Morillion*. *See Kiewit*, 491 F.3d at 1061 ("The facts of *Morillion* are entirely reminiscent of the facts alleged in the instant complaint.")

Unfortunately for ADT, *Morillion*, and by extension, *Kiewit*, "is not instructive here because that case has nothing to do with Labor Code section 2802. Rather, *Morillion* construes the meaning of Wage Order No. 14-80." *James v. Dependency Legal Grp.*, 253 F. Supp. 3d 1077, 1106 (S.D. Cal. 2015). Wage Order No. 14-80 interpreted the term "hours worked," as the term is used in Cal. Code Regs. tit. 8 § 11140 (requiring certain minimum wages to be paid to all agricultural workers for 'hours worked'). Because this case has nothing to do with Wage Order No. 14-80, and everything to do with mandatory reimbursements under section 2802, the Court finds *Morillion* and *Kiewit* inapplicable to Plaintiff's mileage reimbursement claim. *See also Casey v. Home Depot*, No. EDCV 14-2069 JGB SPX, 2016 WL 7479347, at *27 (C.D. Cal. Sept. 15, 2016) ("*Morillion* did not concern an employer's obligation to reimburse mileage expenses under California Labor Code section 2802(a): it only concerned whether the plaintiff

11

3:16-cv-02680-GPC-AGS

employees were entitled to compensation under applicable wage orders for the time spent traveling on their employer's buses.")

*Aguilar v. Zep Inc.*, 13-CV-00563-WHO, 2014 WL 4245988 (N.D. Cal. August 27, 2014) confirms this Court's decision that commute miles are reimbursable. Like in the instant case, the plaintiffs in *Aguilar* were outside sales representatives who were required to use their own vehicles to perform job-related tasks. *Id.* at*3. The *Aguilar* plaintiffs worked at their home offices and regularly traveled to customer locations every day in effort to promote the employer, Zep's, products. *Id.* The plaintiffs sought reimbursement of their travel costs, but Zeps resisted on *Morillion* grounds, arguing that the plaintiffs' first and last trips of the day—i.e., from their homes to the first of the variable work sites—should be counted as unreimbursible, ordinary commute miles. The court rejected Zep's attempted reliance on *Morillion*, concluding instead that "the plaintiffs' first and last trips of the day are valid business mileage just like all other trips between customers." *Id.* at 17. This was because "each time on a given day, [plaintiffs] were traveling en route to a customer's location, *i.e.*, they were engaged in business-necessary travel for the purpose of advancing Zep's commercial interests." *Id.*

To conclude, this Court rejects—on both substantive and procedural grounds—ADT's defense that commute miles were properly withheld from Plaintiff's mileage reimbursements. As the California Supreme Court held in *Gattuso*, "if an employer requires an employee to travel on company business, the employer must reimburse the employee for the cost of that travel under Section 2802." 42 Cal. 4th at 562.

### b. ADT had reason to know that Plaintiff was incurring mileage expenses, and so has a duty to reimburse

Finally, ADT argued that it should not be required to reimburse Plaintiff beyond the fixed rate already paid out for the months during which Plaintiff did not submit any mileage entries to Runzheimer. Plaintiff's contention is premised on *Stuart*, in which the court opined that "if the employer had no knowledge or reason to know that the expense

12

3:16-cv-02680-GPC-AGS

was incurred and the employee withheld that information, it would hardly seem fair to hold the employer accountable." *Stuart v. RadioShack*, 641 F. Supp. 2d at 903.

Unfortunately for ADT, *Stuart* hurts its cause much more than it helps it. There, the court rejected RadioShack's contention that "the duty to reimburse is triggered *only* when an employee makes a request for reimbursement." *Id.* at 903. Instead, it held that "such a narrow construction is at war with § 2802's 'strong public policy ... favor[ing] the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment." *Id.* (quoting *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 952 (2008)). The proper inquiry, which this Court must conduct, focuses "not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense." *Id.*

In light of *Stuart*, the Court does not find Plaintiff's lack of Runzheimer submissions for the months after February 2015 dispositive of his claim for reimbursement. Instead, because ADT did have a reason to know that Plaintiff was engaged in ADT-related travel, ADT had a duty to reimburse Plaintiff. It is undisputed that ADT knew that Plaintiff was using his Sentry for ADT related-business; that was presumably why ADT continued to issue a fixed reimbursement amount to Plaintiff in the months where he did not input any mileage entries (and for which Plaintiff was not issued additional travel compensation at the variable reimbursement rate). Additionally indicative of ADT's constructive knowledge is that Plaintiff continued to receive commissions from ADT for his work as an outside sales representative for the months after February 2015.

Thus, the Court is not given any pause by ADT's contention that Plaintiff should be denied vehicle costs because he did not submit requests for reimbursement. ADT's own cited authority dispels any such argument, and instead mandates that the obligation to reimburse triggers upon the employer's knowledge that reimbursable costs may apply.

**C.     Conclusion**

In light of the above, the Court finds that Plaintiff carried his burden of proof on his first and fourth causes of action (under the UCL and section 2802, respectively) for vehicle mileage reimbursements.[2] Because the recovery under both is coterminous, Plaintiff is entitled to $11,254.93 from ADT for vehicle and mileage expense expended during his tenure as an ADT outdoor sales representative.

### III. Claim for Wage Statements and Employee Records

Plaintiff's final two claims relate to Labor Code sections 226 and 1198.5.

Section 226 requires employers to furnish employees with periodic itemized wage statements that show nine specific categories of information, such as hourly rates, gross wages earned, and deductions, etc. Cal. Lab. Code § 226(a). An action pursuant to section 226(e) requires proof of three elements: (1) violation of section 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury. *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1225 (S.D. Cal. 2015) (citing *Willner v. Manpower, Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)).

"An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e).

Further, section 226(b) mandates employers to afford employees "the right to inspect or receive a copy of records pertaining to their employment"; *id.* § 226(b), and

---

[2] Recovery under both statutes are coterminous where, as here, the section 2802 sounds in restitution. *See e.g.*, *Nelson v. Dollar Tree Stores, Inc.*, No. 2:11-CV-01334 JAM, 2011 WL 3568498, at *5 (E.D. Cal. Aug. 15, 2011) ("[P]reviously incurred expenses may be recovered as restitution under the UCL."); *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, No. CV 12-5796 PSG VBKX, 2013 WL 800265, at *4 (C.D. Cal. Mar. 1, 2013) (holding that where unreimbursed business expenses are restitutionary, they are recoverable under the UCL).

14

failure to permit an employee to inspect or receive a copy of records within 21 days entitles the employee to recover a $750 penalty. *Id.* § 226(f).

Plaintiff alleges that he is owed the $750 penalty under section 226(f) and the aggregate maximum penalty for $4,000 under section 226(e).

Section 1198.5 provides employees with the right to inspect personnel records maintained by the employer "related to the employee's performance or to any grievance concerning the employee." Cal. Lab. Code § 1198.5(a). Employers must allow inspection or copying within thirty days of the request, or thirty-five days upon the mutual agreement of the employer and employee. *Id.* at § 1198.5(b). Employers who do not comply with the dictates of section 1198.5 are responsible for a $750 penalty. *Id.* at § 1198.5(k).

### A. Factual Findings

Plaintiff's Labor Code claims have two parts. The first pertains to Plaintiff's claim that he was not properly furnished with printed wage statements, or easily-accessible online wage statements when he requested them in January of 2015. The second part is premised on Plaintiff's June 2, 2016 request for wage statement and employee personnel files.

With respect to the first part, Plaintiff testified that at the start of his employment with ADT, he would receive his wage statements in paper form. A few months later, in January of 2015, ADT stopped sending Plaintiff printed wage statements and instead made wage statements available electronically. (ECF No. 129, at 87.) Plaintiff tried accessing the electronic statements but found himself deterred. (Depo. of Clayton del Thibodeau, at 267.) At this juncture, Plaintiff completed an online form which permitted him to opt-in to receiving printed wage statements. (ECF No. 129, at 87.) Thereafter, however, Plaintiff was approached by his manager, Robert Harris, who asked Plaintiff to sign away his right to receive printed wage statements. (*Id.*) Plaintiff indicates that he acquiesced to this demand.

15

With respect to the second aspect of his Labor Code claims, after the end of his employment, Plaintiff sent an emailed request to Tricia Cole, ADT's Regional Human Resources Manager on June 2, 2016, asking for copies of (1) all documents in Plaintiff's employee file, (2) his payroll records and wage statements, and (3) all Runzheimer records, submissions, and reimbursements statements. (Tr. Exh. 11.) On that same day, Ms. Cole responded to Plaintiff's email, advising him of how to obtain access to all three requested sets of items. (Tr. Exh. 12.) Plaintiff was directed to send a completed form request for his employee file information to another ADT employee, Jennie Streckling, provided guidance on how to access payroll records via an online system called "ADP Payroll," and given a contact number for Runzheimer. (*Id.*)

Plaintiff testified that at this point, he was able to access the online ADP Payroll website and obtain all of his wage statements, but contends that the information provided via ADP Payroll did not include two payroll related documents, i.e., a "send request," and a "new people assignment" document. Plaintiff's request for employee file documents was bounced back and forth between Ms. Streckling and Ms. Cole until a package of responsive materials was apparently mailed overnight to Plaintiff, postmarked July 29, 2016, approximately fifty-seven days after Plaintiff submitted his written request.

### B. Discussion and Legal Conclusions

#### 1. ADT has waived its Statute of Limitations Defense

At trial, ADT raised the affirmative defense of a one-year statute of limitations under California Code of Civil Procedure section 340. Section 340 prescribes a one-year limitations period for statutory penalties. Cal. Code Civ. Pro. § 340(a). Both of Plaintiff's claims with respect to sections 226(e)-(f) and 1198.5 implicate statutory penalties. *See, e.g.*, *Slay v. CVS Caremark Corp.*, No. 1:14-CV-01416-TLN, 2015 WL 2081642, at *9 (E.D. Cal. May 4, 2015) (holding that a section 266(e) plaintiff "had only one year from his date of termination to bring claims for penalties"); *Abiola v. ESA Mgmt.*, LLC, No. 13-CV-03496-JCS, 2014 WL 988928, at *2 (N.D. Cal. Mar. 3, 2014) (recognizing that section 1198.5 provides for penalties).

16

ADT pointed out that Plaintiff amended his complaint to include the Labor Code violations on December 7, 2016, which is more than one year from when ADT is alleged to have violated Plaintiff's rights. Plaintiff objected that Defendant had waived any statute of limitations defense because none was asserted before trial. Upon a review of the record, the Court agrees with Plaintiff: ADT cannot be permitted to proceed on its statute of limitations defense.

Although ADT signaled in its answer to Plaintiff's FAC that it might raise a statute of limitations defense (ECF No. 18, at 3), ADT never disclosed an intent to raise such a defense in the pretrial order (ECF No. 125, at 7). The Ninth Circuit has held in very similar circumstances that late-blooming limitations defenses must be regarded as waived. *See Contreras v. City of Los Angeles*, 603 F. App'x 530, at 532 (9th Cir. Feb. 20, 2015) (unpublished); *see also First Nat'l Bank of Circle*, 652 F.2d at 886 (holding that because the parties are bound by the pretrial order, a party may not advance a theory at trial if it is not included in the order). The Court thus concludes that Plaintiff's claims cannot be challenged on statute of limitations grounds. It is in fact ADT who is dilatory.

### 2. Plaintiff succeeds on his section 1198.5 claim

Turning first to the section 1198.5 claim, Court finds that Plaintiff has carried his burden by a preponderance of the evidence that ADT failed to provide timely access to his employee file. Plaintiff's June 2, 2016 email made clear that he was seeking materials covered by section 1198.5, and the documents sent by ADT to Plaintiff demonstrated that ADT was aware that Plaintiff was seeking access to "personnel records maintained by [ADT] relating to [his] performance or to any grievance concerning me while I was employed at ADT . . . pursuant to California Labor Code Section 1198.5." (Tr. Exh. 14.)

Despite this, Plaintiff was not given access to his employee file until July 29, 2016. Accordingly, Plaintiff is entitled to the $750 penalty under section 1198.5(k).

### 3. Plaintiff fails on his section 226 claim

Plaintiff's section 226 claim comes in two flavors. The first is predicated on section 226(f) and concerns ADT's alleged failure to comply with Plaintiff's January 2015 request for printed, rather than electronic, wage statements. The second turns on the completeness of the information ADT provided to Plaintiff after his June 2015 request for payroll information pursuant to 226(b).

### a. Unfulfilled request for printed wage statements

Persuasive authority[3] from the California Department of Labor Standards Enforcement ("DLSE") permits employers to issue wage statements electronically so long as employees retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. *See Apodaca v. Costco Wholesale Corp.*, No. CV 12-5664 DSF (EX), 2012 WL 12336225, at *2 (C.D. Cal. Oct. 29, 2012), *aff'd*, 675 F. App'x 663 (9th Cir. 2017) (citing DLSE Opinion Letter dated July 6, 2006)).

Plaintiff appears to argue that he was entitled to, but denied, printed wage statements for the nine months after his January 2015 request to receive printed wage statements. But because California law does not appear to require printed wage statements if electronic copies are readily available, *see id.*, this Court interprets Plaintiff's claim as one sounding in a denial of an easily-accessed electronic wage statement.

The Court finds that Plaintiff has failed to prove that the electronic wage statements made available by ADT through the ADP Payroll system were not readily-accessible. Plaintiff testified at deposition that the program was unnavigable and denied him easy access. (Depo. of Clayton del Thibodeau, at 267.) But, significantly undermining the credibility of that assertion was Plaintiff's admission that he only tried to access his online wage statements one time, back in early 2015. (*Id.*) The Court is not

---

[3] DLSE interpretations of California statutes are "entitled to [the Court's] consideration and respect." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1105 n.7 (2007).

prepared to hold that one frustrated attempt to access electronic wage statements renders the employer liable under section 266(e). This is especially so because Plaintiff's deposition testimony—i.e., that he could not avail himself of the electronic access portal—is contradicted by his trial testimony that he successfully accessed all of his wage statements electronically via the ADP Payroll system in June of 2016. (Tr. at 76.)[4] The Court finds against Plaintiff on his section 266(f) claim.

### b. Incomplete Wage Statement Materials

Finally, the Court addresses Plaintiff's section 226(b) claim that the wage statements he received via ADP Payroll were incomplete. Plaintiff contends that his electronic wage statements (Tr. Exh. 41), did not include two necessary documents: a "send request," and a "new people assignment" document. But, as ADT points out, there is no requirement in section 226 that those items be provided to employees.

Indeed, section 226(b), which sets out the employee's right to inspect copies of records pertaining to their employment, logically pertains only to the employee's right to inspect records pertaining to the nine specific kinds of information referred to in section 226(a). *See Juarez v. Villafan*, No. 116CV00688DADSAB, 2017 WL 6629529, at *11 (E.D. Cal. Dec. 29, 2017), *report and recommendation adopted*, No. 116CV00688DADSAB, 2018 WL 4372784 (E.D. Cal. June 13, 2018) ("Section 226(b) of the California Labor Code requires employers to provide current and former employees the right to copy or inspect records pertaining to their employment and detailed in § 226(a)."). Nothing, however, in section 226(a) mandates that information of the sort identified by Plaintiff be provided. As such, Plaintiff's section 226(b) claim fails.

### V. Conclusion

---

[4] Plaintiff testified that "When I went on the portal that I was instructed to [] my payroll records, I was able to download my wage statements and I was able to download a summary statement of all my wage statements, and I did." (ECF No. 129, at 76.)

19

For the reasons stated above, the Court finds that Plaintiff prevailed on his UCL and section 2802 mileage reimbursement claims. Judgment is entered with respect thereto in the amount of $11,254.93. Plaintiff also prevailed on his section 1198.5 claim under the Labor Code, to which judgment is entered in the amount of $750. Because Plaintiff did not establish a section 226 violation, judgement is entered against Plaintiff on his section 226 claim.

**IT IS SO ORDERED.**

Dated: April 18, 2019

Hon. Gonzalo P. Curiel
United States District Judge